**RICHFIELD OIL CORPORATION,**
Appellant,

v.

**KARSEAL CORPORATION, Appellee.**

No. 15514.

United States Court of Appeals
Ninth Circuit.

Oct. 13, 1959.

O'Melveny & Myers, William W. Alsup; William J. DeMartini, Los Angeles, Cal., for appellant.

Richard I. Roemer, Walter S. Binns, J. J. Brandlin, Thomas G. Baggot, Los Angeles, Cal., for appellee.

Before STEPHENS, and FEE, Circuit Judges, and JAMES M. CARTER, District Judge.

JAMES M. CARTER, District Judge.

This is an appeal from a judgment entered on a jury verdict in a private treble damage action under the anti-trust laws. It presents two questions, (1) the sufficiency of the evidence to support the verdict and judgment, (2) the correctness of instructions given the jury on the effect of a prior decree in a government anti-trust case.

There was originally presented a third question, the reasonableness of an allowance of $7,500 attorney's fee based on the trebled judgment of $23,700. This point was abandoned by appellant Richfield during the oral arguments on the appeal. In any event we do not consider the allowance of such attorney's fee unreasonable.

This case has been here before. In Karseal Corporation v. Richfield Oil Corporation, 9 Cir., 1955, 221 F.2d 358, this same panel of the court held that the amended complaint stated a cause of action and reversed a district court judgment dismissing the action. Reference is made to that decision for the pertinent allegations of the amended complaint.

This action was based upon a prior decree in the government's civil anti-trust action against the Richfield Oil Corporation, United States v. Richfield Oil Corporation, D.C.S.D.Cal.1951, 99 F.Supp. 280, affirmed per curiam in Richfield Oil Corporation v. United States, 1952, 343 U.S. 922, 72 S.Ct. 665, 96 L.Ed. 1334. That case will hereafter be referred to as the Richfield case.

The Richfield case held generally that Richfield's handling of its TBA items, (tires, batteries and accessories) was illegal and in violation of the anti-trust laws because of Richfield requirements by contracts and agreements of exclusive dealing by independent service stations in the TBA items supplied by Richfield. Included within "accessories" under the terms of the Richfield decree, were "automobile waxes and polishes." Karseal's wax and polishes were not expressly named in the Richfield decree. The trial court in the Richfield case concluded and found that the exclusive dealing practices and agreements had "the necessary and intended effect of denying manufacturers and suppliers of * * * automotive accessories, competitive to those manufactured or sponsored by Richfield, access to a substantial number of outlets." [1]

Karseal, claiming that it was within the target area of Richfield's violation of the anti-trust laws and was proximately damaged by Richfield's illegal acts, brought the present action, seeking damages in the sum of $135,000 and praying that the damages be trebled. After the reversal of the dismissal of the action in Karseal v. Richfield (supra), the case was transferred to another judge, (Honorable Leon Yankwich) and was tried to a jury. A verdict in the sum of $7,900 was returned. The verdict was trebled and judgment entered for $23,700, attorney's fees and costs. The district court had jurisdiction of the cause, Sec. 4 of the Clayton Act. 15 U.S.C.A. § 15. This court has jurisdiction of the appeal, 28 U.S.C.A. §§ 1291, and 1294. The appeal was timely filed.

I.

The Evidence Is Sufficient
To Support the Verdict
and the Judgment.

Richfield makes dual contentions—

(a) That there was not substantial evidence of an illegal restraint on Karseal's product, and (b) That there was insufficient evidence of damage.

A. Sufficiency of the evidence as to illegal restraint.

Flintkote Co. v. Lysfjord, 9 Cir., 1957, 246 F.2d 368, certiorari denied 355 U.S. 835, 78 S.Ct. 54, 2 L.Ed.2d 46, states as follows:

"We take it that the controlling rule today in seeking damages for loss of profits in antitrust cases is that the plaintiff is required to establish with reasonable probability the existence of some causal connection between defendant's wrongful act and some loss of anticipated revenue. Once that has been accomplished, the jury will be permitted to 'make a just and reasonable estimate of the damage based on relevant data, and render its verdict accordingly.' Bigelow v. RKO Radio Pictures, Inc., [327 U.S.

---

**1.** The quotation is from a conclusion of law. The findings were to the same effect.

251, 66 S.Ct. 574, 90 L.Ed. 652], supra, 327 U.S. at page 264, 66 S.Ct. at page 580. The cases have drawn a distinction between the quantum of proof necessary to show the *fact* as distinguished from the *amount* of damage; the burden as to the former is the more stringent one. In other words, the *fact* of injury must first be shown before the jury is allowed to estimate the amount of damage." [2] 246 F.2d at page 392. [Emphasis by the Court.]

The prior Richfield decree which was admissible and used in evidence against the appellant, determined that Richfield had violated the anti-trust laws by agreements and understandings, written and oral, directly affecting and unreasonably restraining the course of interstate commerce in TBA automobile accessories, including waxes and polishes. Thus, the Richfield decree itself was prima facie evidence of the restraint of commerce in connection with waxes and polishes. There was substantial evidence that this restraint was not only applied to waxes and polishes generally, but to Karseal's product, "Wax Seal."

Richfield's brief argues the evidence most favorable to its position as if the matter were now before a trial court or jury for decision.

The rule is clear that on appeal from a judgment based upon a jury's verdict, the verdict and judgment based thereon will be sustained if there is substantial evidence in the record in support thereof. We are required to view the evidence in a manner most favorable to the prevailing party, Glasser v. United States, 1942, 315 U.S. 60, 69, 62 S.Ct. 457, 86 L.Ed. 680; Woodard Laboratories v. United States, 9 Cir., 1952, 198 F.2d

995; Las Vegas Merchant Plumbers Ass'n v. United States, 9 Cir., 1954, 210 F.2d 732, 742; Flintkote Co. v. Lysfjord, supra, 246 F.2d at page 375. The prevailing party is entitled to rely upon evidence most favorable to its position.

The testimony offered by Karseal consisted of distributors and salesmen for "Wax Seal," a former Richfield service station operator, a former merchandiser for Richfield, a former TBA man for Richfield and an independent service station operator and others. Without enumerating the testimony in detail, the record shows that distributors for "Wax Seal" were generally unsuccessful in their efforts to sell their product to Richfield TBA men and Richfield service stations; that a Richfield representative told the Richfield service station operator to get Wax Seal out of his window or they would both lose their jobs; that salesmen for "Wax Seal" were told not to come in when Richfield men were around; that "Wax Seal" was occasionally sold in Richfield service stations but kept under the counter and not displayed. A former merchandiser for Richfield testified that he would warn and threaten Richfield dealers who carried non-authorized TBA products. A Richfield merchandiser told a Richfield operator he did not want to see "Wax Seal" in the station.

Thus it was apparent to the jury that independent Richfield service station men were threatened and discouraged from purchasing "Wax Seal" and when occasionally they did purchase, were required to conceal this fact from Richfield and hide the product from view. The jury, looking at the evidence most favorable to Karseal, could conclude that there was a general pattern of exclusion of "Wax Seal" from Richfield service stations, for

---

2. Other cases to the same effect are:
 Wolfe v. National Lead Co., 9 Cir., 1955, 225 F.2d 427, certiorari denied 350 U.S. 915, 76 S.Ct. 198, 100 L.Ed. 802; G. & P. Amusement Co. v. Regent Theater Co., D.C.N.D.Ohio 1952, 107 F. Supp. 453, 461, affirmed per curiam, 6 Cir., 1954, 216 F.2d 749; Chiplets, Inc., v. June Dairy Products Co., Inc., D.C. D.N.J.1953, 114 F.Supp. 129, 143–144; Turner Glass Corporation v. Hartford-Empire Co., 7 Cir., 1949, 173 F.2d 49; Story Parchment Co. v. Paterson Parchment Paper Co., 1931, 282 U.S. 555, 562, 51 S.Ct. 248, 75 L.Ed. 544, and Keogh v. Chicago & Northwestern Railway Co., 1922, 260 U.S. 156, 164–165, 43 S.Ct. 47, 67 L.Ed. 183.

which Richfield was responsible. As the trial judge stated during discussion with counsel, Richfield "had no right to tell the operators of stations, independent operators and not [Richfield] employees, not to buy other products."

In view of the prima facie effect of the prior antitrust decree, all that plaintiff was required to do, as far as proving restraint is concerned, was to show that the general restraint applicable to waxes and polishes referred to in the prior decree was actually applied to the Karseal product, "Wax Seal."

There was sufficient evidence to warrant the jury's conclusion as to restraint.

B. The evidence as to damage was sufficient to sustain the verdict and judgment.

(a) *Causal connection between restraint and damage.*

Richfield concedes that once Karseal had shown that the defendant had violated the anti-trust laws, and the further fact that Karseal actually suffered damage to its business or property as a result of such violation, the jury was permitted to make a just and reasonable estimate of the amount of plaintiff's damage. But Richfield insists that there must be first, proof not only of an unreasonable restraint of trade by the defendant, but also a *causal connection* between defendant's act and a loss of anticipated revenue to plaintiff.

■ Karseal concedes this general statement of the law but asserts that having shown the illegal restraint applied to its product, it had proved the causal connection between the defendant's wrongful act and the loss of revenue. We agree. It seems patent that the restraint applied would result in some loss of business.

Wolfe v. National Lead Co. (supra), is cited by Richfield for its holding that there was *no proof that the plaintiffs had suffered damage.* Richfield states, "In affirming the court pointed out the important distinction in the quantum of proof required as to the *fact* as distinguished from the *amount* of damages."

In the case at hand there was clear causal connection between the alleged restraints applied and damage suffered.

Contrast the factual basis in Monticello Tobacco Co., Inc. v. American Tobacco Co., 2 Cir., 1952, 197 F.2d 629, with the factual situation here. In Monticello, plaintiff could not prevail because of absence of a showing of *causal connection* between the illegal acts of the defendants and the "jobbers' refusals to handle plaintiff's product." At page 633. Here the impact of Richfield's exclusive dealing practices on Karseal was shown by evidence the jury was entitled to and did believe.

(b) *A just and reasonable estimate of damage.*

■ How then is plaintiff to make a showing which will permit the jury to make a just and reasonable estimate of its damage? The Richfield brief concedes, "It is, of course, true that the quantum of proof required to establish the amount of damage is not and should not be as great as that required to establish the fact of damage. If there is substantial evidence that damage to the plaintiff in fact resulted from wrongful conduct of defendant, it is proper to permit the jury to make a just and reasonable estimate of the amount thereof. * * * *".

"A study of the adjudicated cases in this area readily dispels any impression that this question of damages is governed by an application of the common law rule of reasonable certainty. The cases have long since departed from this rule in antitrust legislation. Story Parchment Co. v. Paterson, supra, 282 U.S. at page 565, 51 S.Ct. 248," Flintkote Co. v. Lysfjord, supra, 246 F.2d at page 391. See the general discussion following the above quotation, at pages 391–394.

There is no particular way for a plaintiff, injured by a defendant's violation of the anti-trust laws to show precisely what sales it lost. It certainly cannot prove precisely how may cases of "Wax Seal" were *not sold.*

To assist the jury in making a "just and reasonable estimate of damage," plaintiff offered proof which the jury could believe and consider, that "Wax Seal" sold on the free market, as well or in many instances 3 to 7 times better than a product known as "Mac's," and that "Mac's" was generally a comparable product. Evidence was offered which the jury was entitled to believe that during the period of time involved in this case that Richfield purchased from Mac's Super Gloss Company, 4,707 cases of "Mac's" polish. Karseal then contended that the jury could infer that "Wax Seal" outsold "Mac's" 3 to 1, and that therefore had plaintiff not been denied access to the 3,000 Richfield service stations during the six years between 1947 and 1953, that an estimate of approximately 14,121 cases of "Wax Seal" would have been sold at Richfield stations. Karseal offered evidence which the jury were entitled to believe, that it was staffed, equipped and able to produce sufficient "Wax Seal" to meet these additional sales. It also offered evidence, which the jury was entitled to believe, that its net profit per case of "Wax Seal" for the period in question was 57¢ per case.

Had the jury based its verdict on this computation, the result of course would have exceeded the verdict rendered by about $150 but the jury could have well taken into account that some "Wax Seal" was actually sold by the Richfield stations.

We do not see much difference between the suggested formula as an assist in arriving at just and reasonable damages, and a chart placed on a blackboard in a personal injury case, where plaintiff's lawyer outlines his computations as to loss of earnings, pain and suffering, and the various other items of damage. The plaintiff is not required to prove with mathematical certainty the amount of its damage resulting from a defendant's violation of the anti-trust laws.

Story Parchment Co. v. Paterson Parchment Paper Co., supra, 282 U.S. at pages 562–563, 51 S.Ct. at page 250, states:

" * * * It is true that there was uncertainty as to the extent of the damage, but there was none as to the fact of damage; and there is a clear distinction between the measure of proof necessary to establish the fact that petitioner had sustained some damage and the measure of proof necessary to enable the jury to fix the amount. *The rule which precludes the recovery of uncertain damages applies to such as are not the certain result of the wrong, not to those damages which are definitely attributable to the wrong and only uncertain in respect of their amount* * * *

"Where the tort itself is of such a nature as to preclude the ascertainment of the amount of damages with certainty, it would be a perversion of fundamental principles of justice to deny all relief to the injured person, and thereby relieve the wrongdoer from making any amend for his acts. In such case, while the damages may not be determined by mere speculation or guess, it will be enough if the evidence show the extent of the damages as a matter of just and reasonable inference, although the result be only approximate. The wrongdoer is not entitled to complain that they cannot be measured with the exactness and precision that would be possible if the case which he alone is responsible for making, were otherwise. * * *" [Emphasis added].

Bordonaro Bros. Theatres, Inc. v. Paramount Pictures, Inc., 2 Cir., 1949, 176 F.2d 594, at page 597, states:

" * * * Damages in such a situation necessarily cannot be assessed with mathematical precision; but the testimony of plaintiff's expert witness, Samuelson, 'while purely an estimate and introduced as such, was proof of a kind as definite and certain as the subject-matter admitted.' William H. Rankin Co. v. Associated Bill Posters of U. S. and Canada, 2 Cir., 42 F.2d 152, 155,

certiorari denied Associated Bill Posters of U. S. and Canada v. William H. Rankin Co., 282 U.S. 864, 51 S.Ct. 37, 75 L.Ed. 765. Defendants must not be allowed to create their own immunity by the extent and duration of their conspiracy. * * * " 3

The record showed a restraint in interstate commerce on waxes and polishes which moved in interstate commerce, and particularly a restraint upon "Wax Seal" manufactured and sold by Karseal. It is patent that damage would result. The jury could conclude from the evidence that this restraint applied to Karseal was a planned and continuous one, and that it generally affected to a greater or less degree the majority of the 3,000 Richfield service stations. The jury had evidence before it which indicated that Karseal out-sold on the free market a comparable product such as "Mac's" and had evidence as to how much of the "Mac's" product was sold in Richfield stations during the time involved.

We equate the just and reasonable estimate of damage to the just and reasonable verdict the jury must render in a personal injury case. Both are Tort actions. In neither can the plaintiff prove to any mathematical certainty, what are the damages in dollars and cents.

Story Parchment Co. v. Paterson Parchment Paper Co., supra, 282 U.S. at page 565, 51 S.Ct. at page 251, states:

" * * * There are many cases in which damages are allowed where the element of uncertainty is at least equal to that in the present case— as, for example, copyright and trade mark cases, cases of unfair competition, and *many cases of personal injury* * * * ". [Emphasis added.]

Under all the facts in the case the damages must have a reasonable and fair relationship to the type, extent and period of the restraint applied, the number of outlets affected by the restraint and the kind of product, its price and salability, the profit made on sales, and an estimate of the amount of profit lost by reason of the illegal activities of the defendant. There was here proof of such matters.

In Flintkote Co. v. Lysfjord (supra), plaintiffs were in their first year of working for themselves with no prior record of the success of their business. In the case at hand there was proof of gross dollars sales of $130,000 in the year ending June 30, 1948 and gross dollars sales of $501,000, $675,000, $799,000, $621,000 and $686,000 in the following years. This was *not* proof of business activity prior to the application of the illegal restraints, but *during* the period thereof. We see no reason why a plaintiff who has a substantial volume of sales during a period of illegal restraints would not be damaged by such restraint even if its business started during such period of restraint. The jury might have believed such volume of business indicated no restraint and no damage, but it found to the contrary.

This case is not controlled by Flintkote Co. v. Lysfjord (supra), or Wolfe v. National Lead Co. (supra). Both are distinguishable. Here there was proof of illegal restraint, obvious causal connection between restraint and damage and proof of sufficient facts to permit the jury to make a just and reasonable *estimate* of damages.

Although Karseal sued for $135,000, its counsel realistically approached the problem and presented to the jury a realistic formula, not as exact proof of its damage but to assist the jury in arriving at a just and reasonable verdict. The instructions on damages, unchallenged, were fair and accurate and presented fully the applicable law on damages in this type of action.[4] Looking at

---

**3.** See Eastman Kodak Co. of New York v. Southern Photo Materials Co., 1927, 273 U.S. 359, 47 S.Ct. 400, 71 L.Ed. 684; Bigelow v. RKO Radio Pictures, 1946, 327 U.S. 251, 66 S.Ct. 574, 90 L.Ed. 652.

**4.** The court's instructions on damages were as follows:

I instruct you that the purpose of damage in an anti-trust action of this sort

the entire record, we cannot say that a verdict of $7,900 as the damage suffered for restraint applied on a majority of 3,000 service stations in a six year period was unjust or unreasonable.

## II.

### The Instructions On the Use To Be Made By the Jury Of the Prior Decree.

After giving the general instructions and explaining to the jury the substance of the prior equity decree, the court gave the following instructions which Richfield contends is error:

"* * * The ordinary meaning of the phrase 'prima facie evidence' is this: 'Prima facie evidence' of a fact is such evidence as, in the judgment of the law, is sufficient to establish the fact, and, if not rebutted, remains sufficient for that purpose.

is to put the plaintiff in as good a position as if the illegal acts had never happened.

The law, therefore, allows you, as members of the jury, to arrive at an amount of damages which, in your judgment, under the proof in the case, equals the amount of plaintiff's profit lost as a result of defendant's illegal actions. In this regard, you cannot return a verdict based upon mere speculation, guesswork, or surmise, but the plaintiff, if you find it has suffered injury, is entitled by law to an approximation of what its profits would have been had its rights not been interfered with. Let's re-read that last sentence. In this regard, you cannot return a verdict based upon mere speculation, guesswork, or surmise, but the plaintiff, if you find it has suffered injury, is entitled by law to an approximation of what its profits would have been had its rights not been interfered with.

If you determine that defendant did in fact prevent some of its dealers from purchasing plaintiff's product Wax Seal, and that these dealers would otherwise have purchased plaintiff's product, plaintiff's right to recover is limited to the profits which plaintiff would have made on those sales which plaintiff's distributors would have made but for the action of defendant.

Where the plaintiff had an established business, and the future profits could be shown by past experience, it is permissible to arrive at net profits by deducting from the gross profits of an earlier period an estimated expense of doing business. Damages are not rendered uncertain because they cannot be calculated with absolute exactness. It is sufficient if a reasonable basis of computation is afforded, although the result be only approximated.

If you come to a determination that the plaintiff has been damaged as a result of illegal acts upon the part of the defendant, you may arrive at the amount of such damages as follows:

First: You may consider the evidence regarding the relative amount of auto polish and auto wax sold in the independent service stations which were under written and oral contractual agreements with the Richfield Oil Corporation.

Second: You may consider, in connection with the foregoing, the amount of gross profit which the plaintiff derived from the sale of its product.

Third: You may consider the amount of plaintiff's auto polish and wax sold in service stations under contract with Richfield Oil Corporation in which plaintiff was able to place its product for sale.

The doctrine of proximate cause requires plaintiff to prove that but for oral agreements between defendant and service station dealers the injury complained of by plaintiff would not have occurred. If plaintiff did not suffer any injury to its business or property or if plaintiff was injured by causes other than acts of the defendant, then such injury was not proximately caused by the acts of the defendant and plaintiff is not entitled to recover from the defendant.

Plaintiff's right to recover is limited to actual damages, the amount of which can be determined with reasonable certainty from the evidence. Plaintiff is not entitled to damages which, as I stated before, are merely speculative, remote or uncertain. I do not mean to say that plaintiff would be precluded from recovery because of the fact that damages may not be exactly computed. Damages are recoverable if you are satisfied from the evidence that they may be reasonably approximated upon the evidence in the case. The question of the amount that plaintiff would be entitled to, if you conclude plaintiff is entitled to a recovery, is entirely and solely your responsibility, but it must be based upon some evidence in the case as a foundation that furnishes at least a reasonable approximation of damages that plaintiff has sustained, and cannot exceed the amount prayed in the complaint.

In determining damages you may consider the loss, if any, of profit which the plaintiff has suffered when deprived of the

"But in this case the phrase 'prima facie' has a different meaning. This arises from the fact that the section read to you uses the word 'estoppel.' An 'issue of fact' as to which the judgment operates as an 'estoppel' must be an issue as to an 'ultimate fact' such as is required in allegations of fact in good pleadings or in findings of fact in cases tried to the court and must be the ultimate fact without which judgment would lack support in an essential particular.

"When the plaintiff uses the decree to prove that restrictions applied to waxes and polishes, the defendant cannot controvert the genereral proposition that such restrictions existed. For that matter is what we call res judicata. He is 'estopped' to challenge the general fact. But he may still show that the restrictions were not enforced against the plaintiff's product and that, for this reason, the plaintiff suffered no damage.

"Therefore, it is still necessary in the present case, in order for the plaintiff to recover, for it to prove to your satisfaction, by the weight of the credible evidence that the defendant in an unreasonable manner prevented access of the plaintiff's product to Richfield stations."

Other instructions on the use of the prior anti-trust decree are included in the footnote,[5] were not objected to by

---

right to sell its products through retail service stations under contract to defendant, Richfield Oil Corporation.

In arriving at the extent of such damage suffered by the plaintiff, you may compare the amount of cleaner, auto polish, and wax sold in such service stations by one of the plaintiff's competitors whose products were not denied access to these stations under contract with Richfield Oil Corporation. After having selected a comparable product or products to plaintiff's product, you may ascertain the gross profit which plaintiff would have received from its sale of an equivalent amount of auto cleaner, polish and wax, had it not been denied access to retail stations under contract with the Richfield Oil Corporation. In no case may you award damage which exceeds the amount asked for in the plaintiff's complaint, and as to which testimony was given in the record.

However, the mere fact that the plaintiff may or may not have made as much profit as some competitor does not prove or disprove a violation of the antitrust laws. In a competitive system it is natural that some people will be more successful than others.

The question whether any injury to plaintiff's business or property was caused by the allegedly unlawful acts of the defendant is one that you should not consider prior to determining the issues whether there actually were oral agreements between defendant and service station dealers relating to plaintiff's product. If you decide against plaintiff on this question, it would not be necessary to consider the question of injury and it would be your duty to immediately return a verdict in favor of the defendant.

There is evidence that during parts of the period for which plaintiff claims damages plaintiff either had no distributor in some of the areas in which defendant does business or plaintiff's distributor in some areas made only limited efforts to make sales of plaintiff's product. Plaintiff was not injured by any act of defendant if a dealer did not buy plaintiff's product because he was not called on and requested to buy. Accordingly, if you should determine that defendant did in fact have agreements or understandings with its dealers which caused the dealers to refrain from purchasing plaintiff's product, plaintiff can recover only the profit it would have made on those sales which it proves were lost because of defendant's actions.

The fact that the Court has instructed you with respect to damages is not to be taken by you as an indication that the Court believes or does not believe that plaintiff is entitled to recover damages. Such instructions are given to you solely to guide you in arriving at the amount of your verdict only in the event you find from the preponderance of the evidence and instructions of the Court that plaintiff is entitled to recover. If from the evidence and the instructions of the Court you find that plaintiff is not entitled to recover, then of course you are to disregard entirely the instruction which the Court has given you concerning damages.

5. The complete instructions given by the court insofar as the prior antitrust de-

Richfield and were correct statements of law.

(a) Richfield has waived any error by failing to state the grounds for its objection.

■■■■■■ Though not raised by Karseal, we are concerned at the outset as to whether there was sufficient compliance with Rule 51, Rules of Civil Procedure, concerning objections to instructions given. Rule 51, Rules of Civil Procedure, 28 U.S.C.A., provides in part:

"No party may assign as error the giving or the failure to give an in-

cree was concerned, are as follows: "The court has admitted into evidence the decree, findings of fact, and conclusions of law entered in the case of the United States v. Richfield Oil Corporation, D.C., 99 F.Supp. 280. These findings and decree were entered in a civil suit instituted by the United States in this District against the defendant, Richfield Oil Corporation, charging a violation of the Anti-Trust Laws by the defendant therein with respect to various trade practices and contracts used by the defendant in the sale and distribution of automobile accessories, including waxes and polishes. Among other things, it is provided by federal statute that a final decree or judgment obtained by the Federal Government in such a proceeding under the Anti-Trust Laws shall be prima facie evidence against a defendant named in judgment or decree as to all matters respecting which said judgment or decree would be an estoppel as between the Government and such defendant.

"Such decree is prima facie evidence in this case as to any question which was put in issue and directly determined against defendant Richfield Oil Corporation.

" 'Prima facie evidence' means evidence which is sufficient standing alone and on its face, to establish the existence of a given fact or facts, and which if not rebutted or overcome by other evidence, will remain sufficient to establish such fact or facts throughout the trial. I shall amplify this matter further on in the instructions.

"The following matters among others were put in issue and directly determined in the United States v. Richfield Oil Corporation case against defendant and are prima facie evidence against the defendant in this case:

"1. That the defendant has violated the Anti-Trust Laws by committing the following acts during the period involved in this case:

"(a) By entering into contracts, agreements, and understandings, both written and oral, directly affecting and unreasonably restraining the course of interstate commerce in automobile accessories, including waxes and polishes,

"(b) substantially lessening competition, foreclosing competition and attempting to create a monopoly in the sale and distribution of automobile accessories including waxes and polishes, and which

"(c) unreasonably restrained and substantially lessened competition in interstate commerce in the six States of the Western Area in the sale and distribution of automobile accessories, including waxes and polishes, and

"(d) which had the necessary and intended effect of denying the independent service station operators access to products including waxes and polishes competitive to those handled and sponsored by Richfield and

"(e) confined the independent operators to the handling of and dealing in automobile accessories manufactured, including waxes and polishes handled or sponsored by Richfield.

"The contracts between Richfield and the various stations related to many products. However, you are concerned only with them insofar as they relate to waxes and polishes.

"2. More specifically, the following matters were put in issue and directly determined in the United States v. Richfield Oil Corporation case against defendant:

"Richfield has for many years past, and was at the time of the decree, leasing and acquiring title to service station sites and entering into contractual relations with operators of service stations as retail outlets within the western area; that the term 'service stations', as used aforesaid, refers to a retail outlet at which petroleum products and/or 'automotive accessories' manufactured or 'sponsored' by Richfield are sold to the motoring public. The term 'automotive accessories' as used hereinabove, includes waxes and polishes and other like items. The word 'sponsored,' as used hereinafter, refers to those petroleum products and/or 'automotive accessories' not manufactured or produced by Richfield but sold and distributed at service stations, the sale and distribution of which are handled or arranged for at service stations by Richfield; that

struction unless he objects thereto before the jury retires to consider its verdict, *stating distinctly* the

matter to which he objects and *the grounds of his objection * * ***". [Emphasis added.]

TBA distributors are distributors appointed by Richfield who receive and handle the orders of Richfield service station operators for automobile accessories within a marketing area designated by Richfield; that Richfield has entered into various written and oral agreements and understandings with service station operators.

"The evidence in this case relates to three different types of service stations. The first type, including approximately 1350 stations, involved a lease-out or 'L-O' type of arrangement. These stations were either owned by Richfield or leased by Richfield from a third person. In either event, the station was then leased by Richfield to an independent operator. The only written agreement between Richfield and L-O station operators was a lease.

"The second type, including approximately 280 service stations involved three written agreements or a so-called '3-C' type of arrangement. These stations were either owned or leased from third persons by an independent operator. Under the 3-C arrangement such stations were leased to Richfield and leased back by Richfield to the operator. At the same time, Richfield and the operator entered into a sales contract for petroleum products. The only written agreements between Richeld and 3-C station operators were the two leases and the sales contract.

"The third type, including approximately 1,370 service stations, involved a so-called '337' arrangement. These stations were either owned or leased from third persons by the station operator. The station operator entered into two agreements with Richfield, one of which provided for the painting of the service station and equipment with Richfield's colors and insignia at Richfield's expense, and the other of which provided for the sale of petroleum products to the operator by Richfield. These were the only written agreements between Richfield and 337 station operators.

"You are instructed that the foregoing written agreements standing alone were an entirely lawful and valid method of establishing the business relationship between Richfield and independent station operators distributing its products.

"However, oral agreements between Richfield and the operators of the foregoing three types of stations are alleged to have been entered into at substantially the same time as the written

agreements and relate to the handling by the operator at his service station of petroleum products and automotive accessories, including waxes and polishes, manufactured or sponsored by Richfield on an exclusive basis.

"Beginning in 1944, Richfield inaugurated a new TBA program (TBA meaning tires, batteries, accessories) for distributing its automotive accessories to the L-O, 3-C and 337 dealer service stations. Since 1944, Richfield has sold and distributed automotive accessories, which it purchases from various manufacturers and suppliers, directly to the L-O, 3-C or 337 dealer service stations or through TBA distributors designated by it.

"There is evidence that L-O station operators were instructed by Richfield *that they were to deal in gasoline, oil and automotive accessories for which the sale to these operators was made or arranged by Richfield.* Plaintiff contends that this result in agreements that L-O station operators would not deal in wax polish manufactured by plaintiff. Richfield contends that the instructions given by it to L-O station operators were directed primarily to major accessory items such as tires, tubes and batteries *and that in actual fact L-O station operators were not prevented from handling and, in fact, did handle plaintiff's wax polish.* Plaintiff has the burden of proving that there were oral agreements between Richfield and L-O station operators, which applied to plaintiff's wax polish, and that in fact such oral agreements were carried out with respect to plaintiff's wax polish.

"Plaintiff also contends that such instructions were given *and resulted in agreements that 3-C and 337 station operators would not deal in plaintiff's polish.* Richfield contends that no such instructions were given and that in actual fact 3-C and 337 station operators were free to deal and, in fact, did deal in plaintiff's wax polish. Plaintiff has the burden of proving that there were oral agreements between Richfield and such station operators *applicable to plaintiff's wax polish, and that such agreements were in fact carried out with respect to plaintiff's product,* to their damage.

"It is not enough in a private suit of this character for a plaintiff to show simply that there was a violation of the antitrust laws. It is essential that plaintiff establish not only the fact of such violation but also that it resulted direct-

Counsel were given an opportunity out of the hearing of the jury to make their objections to the instructions given. Only two objections were made and both were of a most sketchy character. Counsel for Richfield stated:

"The only ones to which we have objection Your Honor, are ones with

ly and proximately in injury to its business or property. In this case plaintiff would not be entitled to any recovery unless it had shown to your satisfaction by a preponderance of the evidence that it had actually lost sales of its wax polish by reason of the allegedly unlawful acts of the defendant and/or that it suffered a loss of profits by reason thereof. * * *

"Plaintiff alleges in its complaint that defendant prevented its dealers from purchasing the plaintiff's product Wax Seal from plaintiff's enfranchised distributors and their salesmen from July, 1947, when plaintiff was first organized, to January 3, 1953. You are instructed that in no event can plaintiff recover damages for any period subsequent to January 3, 1953.

"The law provides:

"'Any person who shall be injured in his business or property by reason of anything forbidden in the Anti-Trust Laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent.'

"This means that there is made available to a private litigant, such as the plaintiff in this case, as prima facie evidence, any fact which was at issue and was determined in the Richfield-Government suit with respect to the defendant therein. The proof so offered, plus a showing that the conspiracy had an impact upon the plaintiff's product—Wax Seal—and that it suffered damage as a result, would be sufficient to establish a prima facie case. * * *

"The ordinary meaning of the phrase 'prima facie evidence' is this: 'Prima facie evidence' of a fact is such evidence as, in the judgment of the law, is sufficient to establish the fact, and, if not rebutted, remains sufficient for that purpose.

"But in this case the phrase 'prima facie' has a different meaning. This arises from the fact that the section read to you uses the word 'estoppel.'

"An 'issue of fact' as to which the judgment operates as an 'estoppel' must be an issue as to an 'ultimate fact' such as is required in allegations of fact in good pleadings or in findings of fact in cases tried to the court and must be the ultimate fact without which judg-

ment would lack support in an essential particular.

"When the plaintiff uses the decree to prove that restrictions applied to waxes and polishes, the defendant cannot controvert the general proposition that such restrictions existed. For that matter is what we call res judicata. He is 'estopped' to challenge the general fact. But he may still show that the restrictions were not enforced against the plaintiff's product and that, for this reason, the plaintiff suffered no damage.

"Therefore, it is still necessary in the present case, in order for the plaintiff to recover, for it to prove to your satisfaction, by the weight of the credible evidence that the defendant in an unreasonable manner prevented access of the plaintiff's product to Richfield stations.

"This for the reason that there was no finding in the government suit concerning plaintiff's special product 'Wax Seal.' —let's read that again. This for the reason that there was no special finding in the government suit concerning plaintiff's special product 'Wax Seal.' You have before you evidence of both the plaintiff and the defendant with respect to the issue whether plaintiff's product was restrained and you should make your own determination on the basis of this evidence whether plaintiff's distributors and their salesmen were actually denied access to Richfield stations. * * *

"At the risk of repetition, I reiterate that it is important that you understand the relation of this case to the government case decided in 1948. That case was instituted by the government of the United States. It was not a criminal case. It was a civil case in which the Government alleged that Richfield through tie-in agreements, and other methods was guilty of certain practices which were in violation of the antitrust laws.

"In that case, I found in substance that certain practices were in violation of the antitrust acts and I issued an injunction prohibiting Richfield from indulging in those acts in the future.

"The findings and the decree in that case are before you. The findings are marked Plaintiff's Exhibit I and the Decree is marked Plaintiff's Exhibit I-A, which you may take with you to the jury room along with the other exhibits. In order that you may understand the proper relation of the findings and decree in

respect to the effect of 'prima facie' * * * And of the others, there were two instructions in which the words 'gross profits' were used."

The objections as to the use of the words "gross profits" were considered by the court and the jury were subsequently instructed, with the consent of Richfield, that the court had inadvertently used the word "gross" and the court deleted it and instructed the jury to disregard it. No error is here assigned.

As to the objection to the instruction involving the words "prima facie" and to the use to be made of the prior anti-trust decree, in addition to the objection heretofore quoted which states no ground whatsoever, the following is all that appears in the record. After the court and counsel had agreed on correcting of the words "gross profits" in the instructions, a Richfield attorney stated: "The only objection we would have then would be to give our No. 14[6] as to the 'prima facie'." The Court: "I think you are absolutely wrong on that, I stake my entire case on that." Richfield counsel: "We will specifically except to that Your Honor." * * * "Your Honor, just one other point, if we may clear up this objection. We have excepted to the failure to give our instruction No. 14, and we, of course, except to the giving of the instruction on prima facie as given

that case to this one, I state again to you generally that the law provides that any person who has been injured or damaged by any acts in violation of the anti-trust laws may bring an action for damages.

"The Government's suit was not for damages and nobody was named as plaintiff except the Government of the United States. The object of the Government was to stop certain practices and witnesses were brought to show that those practices were indulged in.

"Now, the law provides also, as you were informed at the beginning, that anyone who has been injured by these practices may bring a private suit for damages.

"In that private suit, the plaintiff, the person who is injured, who has been damaged, brings a suit just as anybody else would bring an action who claims to have been injured by someone else's wrongful act.

"That is the type of suit we are trying here. The Government of the United States has nothing to do with this lawsuit. This is a private lawsuit between two private parties. However, the law provides that in any such action the parties may, if they want to, use the decree which the Court has entered in the Government case, and that decree shall be prima facie evidence of the facts that the court found. I have already explained to you fully the meaning of this phrase.

"The decree merely finds that certain acts were done. For instance, with relation to the present lawsuit, the decree did find that certain restrictive practices were indulged in relating to the waxes and polishes but it does not specify what the waxes and polishes were. It merely said 'waxes and polishes.'

"And that is the only purpose for which that decree may be considered by you. The decree in itself, does not make out a case for plaintiff. The plaintiff, Karseal, has to show that that prohibition against waxes and polishes was actually exercised as to its wax and that by reason of the exercise of that policy as to it, it was damaged by losing sales it could otherwise have made.

"To sum up: There are three elements to this lawsuit. First, the decree in the government suit. That stands undisputed as to the general practices involved. The second element is the effect, if any, of the restrictions found in the decree on the plaintiff's product. That is subject to proof on the part of both sides.

"The third element is what, if any, damage the plaintiff has suffered, that is, the effect of the practice on the plaintiff's product and whether by the enforcement of that practice, it suffered any damage at all. To that element also evidence was offered by both parties.

"These are the three elements of the lawsuit. The instructions given state fully the legal principles which govern the determination of these questions. * *"

6. Defendant's Instruction No. 14

The decree in the prior government case, to which I have referred, is only prima facie evidence with respect to certain matters. Prima facie evidence is such as to ·be sufficient to establish a fact unless it is rebutted by other evidence. If there is other evidence controverting the fact, you are required to make your own determination of that fact by weighing all of the evidence which pertains to it. °

by Your Honor." This certainly is not a compliance with the rule requiring that counsel state not only the matter to which he objects, but state "distinctly * * * the grounds of his objection."

It is true that in an earlier portion of the record long before the conference on instructions and the actual instruction of the jury, there was discussion of this problem,[7] and we think it is fair to say that prior to the time of the giving of the instructions, and at the time provided by statute, after the giving of instructions, for the making of objections thereto, counsel for Richfield knew the court's position and the court knew counsel's position. The court had stated: "The meaning of that word 'prima facie' does not mean that the defendant in a case of this character can come in and controvert that finding in the other case * * *", and again " * * * this is a thing I have in mind, that they are prima facie to the practice, and that two things are necessary, one to relate the practice to you and then the proof of damage. * * *"[8]

Thus, although the court's position was well known to Richfield's counsel, when the time arrived to make objec-

tions, Rule 51 of the Rules of Civil Procedure was not complied with. The purpose of the Rule is to give the court a chance to correct an erroneous instruction on the law. Though viewed realistically, we might hazard a guess that it would have been a difficult task, even by stating distinctly the grounds of the objection, to have caused the court to change its previously announced position. Nevertheless, to preserve the question, on appeal, not only should the objection have been made but the grounds thereof should have been distinctly stated, Husky Refining Co. v. Barnes, 9 Cir., 1941, 119 F.2d 715, 717, 134 A.L.R. 1221; Shevlin-Hixon Co. v. Smith, 9 Cir., 1947, 165 F.2d 170, 179; Johnson v. Chesapeake and Ohio Ry. Co., 7 Cir., 1955, 227 F.2d 858, 860–862; Franklin v. Shelton, 10 Cir., 1957, 250 F.2d 92, 98; See, Palmer v. Hoffman, 1943, 318 U.S. 109, 119, 63 S.Ct. 477, 87 L.Ed. 645, rehearing denied 318 U.S. 800, 63 S.Ct. 757, 87 L.Ed. 1163.

Accordingly, Richfield's objection to the court's instructions is not available to it on this appeal. But we have nevertheless considered the question as to whether giving the instruction was error.

7. No stipulation appears in the record that earlier objections and grounds stated by Richfield, might be incorporated by reference in the record at the time of making objection to the instructions given. This practice has been approved in the Ninth Circuit. See, Las Vegas Merchant Plumbers Ass'n v. United States, 1954, 210 F.2d 732, 744–745 and cases cited therein. The trial judge in the case at bar does not follow this practice.

8. Other statements showing the position of the trial judge are as follows: " * * * You can put before this jury facts, that this restriction was not effective, or partly effective only, as to Karseal, but you cannot say that it was not effective as to anybody * * *". And again. The Court: "Well, I am giving you the logic by which it would be an absolutely illogical situation, where a jury would determine not whether this plaintiff was damaged by this practice, but whether the practice existed as to all * * *". "The only thing I would

submit to the jury is this: That the plaintiff has to show that this practice was applied to them in this territory, and that they were damaged by it, and then you can show that it wasn't applied as to them and/or they weren't damaged, and those are the only three elements I know of in a treble damage suit. * * *"
" * * * But you can't go behind the decree and say this was not practiced as to anybody else." "You can say, 'We did not practice it as to Karseal,' but to go behind the decree and offer evidence that you did not practice it as to any-one would be to nullify this act of Congress, which only says it shall be prima facie, but defines it by saying the extent that people would be estopped * * *". And again. The Court: "If your theory is correct, then that section is absolutely meaningless, because you are going to retry before this jury, and I would have to instruct them, that they can find despite my decree not only didn't they exercise this as to this plaintiff, but they didn't exercise it as to anybody. * * *".

(b) It was error to so instruct but the error was not prejudicial.

 Turning to the correctness of the questioned instructions, Section 5 of the Clayton Act, 15 U.S.C.A. § 16, provides as follows:

"§ 16. Judgment in favor of Government as evidence; limitation of actions

"A final judgment or decree rendered in any criminal prosecution or in any suit or proceeding in equity brought by or on behalf of the United States under the antitrust laws to the effect that a defendant has violated said laws shall be prima facie evidence against such defendant in any suit or proceeding brought by any other party against such defendant under said laws as to all matters respecting which said judgment or decree would be an estoppel as between the parties thereto: Provided, This section shall not apply to consent judgments or decrees entered before any testimony has been taken. * * *"

When the Clayton Act was originally passed by the House of Representatives it contained language which would make the government decree "conclusive evidence against the defendant of the law and facts determined in the prior equity action." However, the Bill was amended in the Senate substituting the words, "prima facie" for the word "conclusive." As so amended the Bill passed the Senate, was agreed to by the House conferees and became law. Report of the Senate Judiciary Committee set forth in the margin [9] pointed out that considera-

9. In section 6 there are two paragraphs as it came from the House. The first paragraph provides in substance that whenever in any suit in equity hereafter instituted by the United States a final decree is rendered against a defendant for violating any of the antitrust laws said decree shall, to the full extent to which such decree would constitute in any other proceeding an estoppel as between the United States and such defendant, constitute against such defendant conclusive evidence of the same facts, and be conclusive as to the same questions of law, in favor of any other party in any action brought under the provisions of any of the antitrust laws. It is proposed to amend this by making the decree in favor of the United States prima facie evidence against the same defendant in any suit brought by any other party under the antitrust laws as to all matters respecting which said decree would be an estoppel as between the parties thereto. The material difference between the House provision and the Senate amendment is of course whether the decree in favor of the Government shall be prima facie evidence against the same defendant in a subsequent suit by another party or be conclusive against such defendant. The Committee think there are considerations of public policy which favor the House provision of conclusiveness, but in the state of the decisions of the Supreme Court of the United States in kindred cases they believe the law should go no further than to make the decree prima facie evidence. As a type of the opinions of the Supreme Court which have been examined by the committee in analogous cases attention is invited to the following:

"Without going at length into the discussion of a subject so often considered, we think the conclusion reached by the courts generally may be stated as follows: It is competent for the legislature to declare that a tax deed shall be prima facie evidence not only of the regularity of the sale, but of all prior proceedings, and of title in the purchaser, but that the legislature cannot deprive one of his property by making his adversary's claim to it, whatever that claim may be, conclusive of its own validity, and it cannot, therefore, make the tax deed conclusive evidence of the holder's title to the land.

"Mr. Cooley sums up his examination of the cases on this subject in the following statement: 'That a tax deed can be made conclusive evidence of title in the grantee we think is more than doubtful. The attempt is a plain violation of the great principle of Magna Charta, which has been incorporated in our bill of rights, and, if successful, would in many cases deprive the citizen of his property by proceedings absolutely without warrant of law or of justice; it is not in the power of any American legislature to deprive one of his property by making his adversary's claim to it, whatever that claim may be, conclusive of its own validity. It cannot, therefore, make the tax deed conclusive evidence of the holder's title

tions of public policy might favor the House proposition of conclusiveness, but that serious doubts existed as to the constitutionality of' such a proposition, in that it would deprive one of his property without due process of law.

The reason for the concurrence by the House with the Senate amendment was expressly to the same effect.[10]

In Emich Motors Corp. v. General Motors Corp., 7 Cir., 1950, 181 F.2d 70, at page 76, reversed on other grounds 340 U.S. 558, 71 S.Ct. 408, 95 L.Ed. 534, the Seventh Circuit quoted the following instruction given to the jury with approval:

"Being prima facie evidence, the judgment is not conclusive in this case. It is merely sufficient evidence of a violation by these defendants of the anti-trust laws to put these defendants to their proof * * *".

In the same case in the Supreme Court, Emich Motors Corporation v. General Motors Corporation, 1951, 340 U.S. 558, at pages 568–569, 71 S.Ct. 408, at page 413, the court said:

"* * * By its terms, however, § 5 makes a prior final judgment or decree in favor of the United States available to a private suitor as prima facie evidence of 'all matters respecting which' the judgment 'would be an estoppel' between the defendants and the United States. We think that Congress intended to confer, *subject only to a*

*defendant's enjoyment of its day in court against a new party,* as large an advantage as the estoppel doctrine would afford had the Government brought suit.

"The evidentiary use which may be made under § 5 of the prior conviction of respondents is thus to be determined by reference to the general doctrine of estoppel. * * * Accordingly, we think plaintiffs are entitled to introduce the prior judgment to establish *prima facie* all matters of fact and law necessarily decided by the conviction and the verdict on which it was based." [Emphasis added.]

It is this portion of the Supreme Court's decision which the trial court apparently relied upon, together with Theatre Enterprises, Inc. v. Paramount Film Distributing Corp., 1954, 346 U.S. 537, 74 S.Ct. 257, 98 L.Ed. 273. But we think the judge's reliance on these cases was misplaced. The language relied upon from the Theatre Enterprise case (supra), as shown in the record of our case during prior discussion between the court and counsel, was the following:

"* * * These instructions, petitioner argues, were 'so superficial and so limited as to deprive petitioner of any of the benefits conferred upon it' by § 5.

"We cannot agree. The trial judge instructed in effect, that the Paramount decrees alone could not

---

to the land, or of the possible jurisdictional facts which would make out title. But the legislature might doubtless make the deed conclusive evidence of * * * everything except the essentials.' Cooley on Taxation, 521, 5th ed., 1886. (Marx v. Hanthorn, 148 U.S. [172] 183, 13 S.Ct. 508, 37 L.Ed. 410)" (Senate Report No. 698, 63rd Cong., 2d Sess. at p. 45).

10. Now let us pass to section 6, which refers to the "conclusiveness" or "prima facie" effect of judgments in Government suits against the trusts. As the House passed the section we made such judgment "conclusive". The Senate struck out the word "conclusive" and inserted "prima facie." Personally, I think

the Senate did the best thing by making it "prima facie." I doubt whether the courts would have held that the "conclusive" provision was constitutional. On the other hand, I believe that the "prima facie" effect of the judgment is as powerful before a jury as if you had said that it was "conclusive." A great many lawyers, and some of the best ones in the Government service, think that a provision making the judgment conclusive would have rendered the bill unconstitutional, but with the "prima facie" provision it is constitutional and will be as effective as if we had left it "conclusive." 51 Cong.Rec., Part 16, p. 16,276.

support a recovery by petitioner; additional evidence was required to relate the presumed Paramount conspiracy to Baltimore and to the claimed damage period. The reasons for this are clear. The Paramount decrees did not rest on findings, nor were the findings based on evidence, of a particular conspiracy concerning restrictions on runs and clearances in Baltimore theatres; yet such a conspiracy is the nub of plaintiff's claim. The Paramount case involved a conspiracy found to exist as of 1945, which was enjoined no later than June 25, 1948; but the conspiracy alleged here involves a claimed damage period running from February 1949 to March 1950. Indeed, the relevancy of Paramount to the instant case is slight. * * ". 346 U.S. at pages 543–544, 74 S.Ct. at page 261.

However, the court in the Theatre Enterprises case (supra) had earlier stated:

"* * * Petitioner next contends that the trial judge, when instructing the jury, failed to give sufficient weight to the Paramount decrees. The decrees were admitted in evidence pursuant to § 5 of the Clayton Act, which provides that a final judgment or decree rendered against a defendant in an equity suit brought by the United States under the anti-trust laws 'shall be prima facie evidence against such defendant in any suit or proceeding brought by any other party against such defendant under said laws as to all matters respecting which said judgment or decree would be an estoppel as between the parties thereto * * *.' Exercising his discretion to choose the precise manner of explaining a decree to the jury, the trial judge instructed that:

"'* * * [T]hese same defendants had, at a time previous to the opening of the Crest Theatre, con-

spired together in restraint of trade in violation of these same Anti-Trust laws, in restricting to themselves first run and in establishing certain clearances in numerous places throughout the United States. Thus, these proven facts, I instruct you, become *prima facie* evidence in the present case, which the plaintiff may use in support of its claim that what the defendants have done since those decrees, in the present case in Baltimore, is within the prohibition of those earlier decrees. However, this is only *prima facie* evidence. There was not before the Court in the prior case the present factual situation which is before you now with respect to Baltimore theatres. Therefore, it is still necessary in the present case, in order for the plaintiff to recover, for it to prove to your satisfaction, by the weight of the credible evidence, that these defendants, or some of them, have conspired in an unreasonable manner to keep first run exhibitions from the plaintiff, or have conspired to restrict plaintiff to clearances which are unreasonable.' * * * ". 346 U.S. at pages 542–543, 74 S.Ct. at page 260.

We think the holding of the Theatre Enterprises case is directly contrary to the position of the trial judge.

Richfield argues, we think correctly, as follows:

"* * * If Section 5 of the Clayton Act made the government decree conclusive evidence rather than merely *prima facie* evidence which the defendant could rebut, this obviously would deprive a defendant in a treble damage action of its right to a jury trial of the issue of the violation of the law."

The other reported cases confirm our view that the instruction of the trial court was erroneous. In Harrison v. Paramount Pictures, D.C.E.D.Pa.1953, 115 F.Supp. 312–315, affirmed by the Third Circuit on the opinion below 211 F.2d 405, the court said:

"The [Emich] case decided what matters the prima facie case covered, but there is nothing in the opinion to support the plaintiff's argument that the presumptions arising from the decree in favor of the United States are conclusive and incontrovertible. *It is hardly necessary to say that the references to estoppel in Section 5 of the Clayton Act merely define the area which the prima facie case covers.*" 115 F.Supp. at page 315. [Emphasis added.]

To the same effect is Zuckerman v. E. I. du Pont de Nemours Company (S.D.N.Y. 1953) 1952–53 C C H Trade cases, Sec. 68–346, otherwise unreported:

"Plaintiff in his moving papers urges that the judgment in the antitrust suit brought by the United States is conclusive as against defendant and that the misuse of patents by defendant invalidates its defense of ownership. * * *

"The purpose of Section 15 was to lighten the burden of proof of a private litigant and to facilitate the presentation of the necessarily extensive proof of such a conspiracy. However, the prior judgment is not to be accepted as conclusive proof of the conspiracy found; it is merely prima facie evidence against which defendant is entitled to his day in court for the purpose of rebuttal. * * *".

In Eagle Lion Studios, Inc. v. Loew's, Inc.,'358 U.S. 100, 79 S.Ct. 218, 3 L.Ed. 2d 147, the Supreme Court had granted certiorari on the question, "Were findings in the government's prior antitrust suit prima facie evidence under Section 5 of the Clayton Act of conspiracy against the plaintiffs," but the Supreme Court affirmed the lower court (248 F.2d 438), per curiam by an evenly divided court. The Circuit had affirmed (one judge dissenting) the dismissal of the case in the trial court for failure of proof of conspiracy.

The trial court had examined the prior Paramount decree and its findings and conclusions, and had concluded that "while the findings may perhaps constitute evidence * * * that Loew's and RKO had no competition between themselves in obtaining pictures from the defendant distributors who were parties to the Paramount case and had monopolized between themselves the first neighborhood run in New York City, the findings, standing by themselves, are certainly not evidence that there was no competition between Loew's and RKO in obtaining and distributing pictures of so-called 'independents' such as the plaintiffs in the present case." 248 F.2d at page 443. On appeal the appellants characterized this as a "niggardly construction" of the Paramount judgment. At page 443.

The Circuit court said (at page 444):

" * * * In determining, under that section, [Sec. 5, Clayton Act] the effect of a judgment in a prior anti-trust suit it is not our function to consider inferences, whether reasonable ones or not, that might be drawn from the language of the prior judgment. Under section 5 a judgment in a prior suit is *prima facie evidence* 'as to all matters respecting which said judgment * * would be an *estoppel* as *between the parties thereto* * * *'." [Emphasis added in opinion.]

The court quoted from its decision in Monticello Tobacco Co., Inc. v. American Tobacco Co., supra, 197 F.2d 629, 631–632:

" * * * whatever is crucial to the treble-damage case and is not distinctly determined in the previous government suit must be proved by direct evidence. * * *" (Citing cases.)

The court concluded 248 F.2d (at pages 444–445),

" * * * Applying these principles to the Paramount judgment we conclude that the issue here in suit

was not 'distinctly determined' in the Paramount litigation * * * In short, we must look elsewhere if we are to find any evidence of the conspiracy that the plaintiffs here charge."

The Eagle Lion case (supra), is the last decision by the Supreme Court touching the effect of Sec. 5 of the Clayton Act, but the per curiam affirmance by an evenly divided court affords little help.

We have been able to find no authority supporting the instruction of the trial court on Karseal's position on this problem. We think the fallacy would be well demonstrated by the following example. Suppose that the prior anti-trust decree had not only determined generally the restraint against waxes and polishes but also had determined particularly a restraint against Karseal's "Wax Seal". Applying the trial court's logic, this would have required him to have instructed that the prior anti-trust decree was conclusive on the question of restraint against the plaintiff Karseal and its product, and the only question then left open to the jury would have been the question of Karseal's damage. Certainly this is not the law.

However, we cannot say that the error was prejudicial. Immediately following the challenged instruction, the court said:

"Therefore, it is still necessary in the present case, in order for the plaintiff to recover, for it to prove to your satisfaction, by the weight of the credible evidence that the defendant in an unreasonable manner prevented access of the plaintiff's product to Richfield stations. This for the reason that there was no special finding in the government's suit concerning plaintiff's special product Wax Seal. You have before you evidence of both the plaintiff and the defendant with respect to the issue, whether plaintiff's product was restrained. You should make your own determination on the basis of this evidence whether plaintiff's distributors and their salesmen were actually denied access to Richfield's stations."

Various other instructions given by the court correctly stated the law. They are quoted in the margin.[11]

In summing up the court said: "The decree in itself does not make out a case for plaintiff. The plaintiff, Karseal, has to show that the prohibition against waxes and polishes was actually exercised as to its wax and that by reason of the exercise of that policy as to it, it was damaged by losing sales it could otherwise have made."

Thus, under the instructions given, Karseal was still required to prove that an unlawful restrain was applied by Richfield to its product "Wax Seal," that it was damaged thereby, and the extent of its damage.

It cannot be argued that the jury was prejudiced by being informed of the prior decree, for it was clearly admissible. Even had the questioned instruction not been given, the jury would have had before it the prior decree and would have known that Richfield had been found to have violated the anti-trust laws by its exclusive dealing practices in TBA items, including wax and polishes.

There was left to the jury by the court's instructions all the proper elements of a treble damage case, (1) were illegal procedures applied to plaintiff and its product, (2) was the plaintiff damaged, (3) the extent and amount of such damage.

We see the problem the trial court was approaching. In a private treble damage action it is necessary to prove, (1) *public injury*, i. e. a violation of the anti-trust laws, and (2) *private injury*. In a government anti-trust case only proof of the public injury is required.

As stated in Emich Motors Corp. v. General Motors Corp., 7 Cir., 1950, 181 F.2d 70, 75, reversed on other grounds 340 U.S. 558, 71 S.Ct. 408, 95 L.Ed. 534,

11. See note 5 (supra).

"And we think the judgment is available at least for the limited purpose of establishing that there had been *a violation of public rights in the absence of which plaintiff would have no cause of action* under the statute, and from which violation they assert their injury stemmed." [Emphasis added.]

The trial court was of the view that the public injury was conclusively established by the prior anti-trust decree. But the trial court required Karseal to prove the impact of Richfield's actions on it and its product "Wax Seal." When this was proved, then public injury was proved since Karseal was a member of that illusive body, the "public." The purpose of the anti-trust laws is to protect the interstate market from illegal restraints. If such restraints are applied to one person in the interstate market, then free competition is hurt and damaged.[12]

When Richfield hurt and damaged Karseal it hurt and damaged free competition, the touchstone of the anti-trust laws. This was what the trial judge's instructions required Karseal to prove.

We therefore conclude that appellant Richfield, for failure to comply with Rule 51 of the Rules of Civil Procedure, does not have available to it on this appeal, the right to challenge the instruction as given by the court and alternately, that although the instruction complained of was erroneous, in view of other instructions by the court and the scope of the issues left to the jury, the error was not prejudicial.

The judgment of the district court is affirmed.

JAMES ALGER FEE, Circuit Judge, did not participate in this decision.

12. This opinion was prepared prior to the decision in Klor's, Inc. v. Broadway-Hale Stores, 359 U.S. 207, 209, 79 S.Ct. 705, 3 L.Ed.2d 741. There the court said that a combination "is not to be tolerated merely because the victim is just one merchant whose business is so small that

his destruction makes little difference to the economy. Monopoly can as surely thrive by the elimination of such small businessmen, one at a time, as it can by driving them out in large groups. * * " 359 U.S. at page 213, 79 S.Ct. at page 710.