NATIONAL HOUSEWARES CORP. *v.*
LEAH B. TRAHIN

5-4920                                   444 S. W. 2d 68

Opinion delivered August 25, 1969

*Allen, Dahlen & Young,* for appellant.

*Rose, Meek, House, Barron, Nash & Williamson,* for appellee.

CARLETON HARRIS, Chief Justice. The question in this case is whether National Housewares Corporation, appellant herein, is entitled to remove certain partition walls from a building owned by Leah B. Trahin, appellee herein. The evidence reflects that on November 1, 1959, appellant leased the front portion of a building at 1217 Broadway Street in Little Rock under a sub-lease with Delta Oxygen Company, the latter having leased the entire building from Mrs. J. M. Bourne, the then owner. At the time of the execution of this sub-lease, National Housewares Company requested of Delta that it (National Housewares) be given permission to sub-

lease a portion of the premises it had leased to another party; also, permission was requested to construct partitions which National Housewares desired to remove at the expiration of the lease. Delta Oxygen gave its consent to both requests, stating, however, that if the partitions were attached to the building, it would be necessary, upon removal of same, to place the building back in the same condition as existed prior to the construction of the partitions. The record does not reflect that Mrs. Bourne or Mrs. Trahin, the subsequent owner, ever approved the sub-lease between appellant and Delta, or gave permission for the partitions to be constructed — or to be removed. In fact, there is no evidence that the owner was ever aware of the sub-lease and agreements between National Housewares and Delta—nor is there evidence relating to whether Delta had the right to sublet any part of the premises. The lease was not introduced into evidence. Following the agreement between appellant and Delta, partition walls and shelving were constructed in separate panels or sections, and set into place. According to Robert O. Rogers III, employed by National Housewares Corp., the partitions were made of substantial material, constructed at proper lengths to fit the areas, and were connected to the walls of the building by nails driven through the end upright stud a short distance into the plaster of the wall. Rogers said that a "few" six-penny nails were driven through the wood in the bottom of the partitions and into the floor sufficiently to keep the partitions from sliding sideways. None of the area was partitioned fully to the ceiling of the building. Rogers stated that the partition walls only extended about half-way to the ceiling. Cost of labor and materials for this construction was $2,100.00.

After entering upon the premises, National Housewares sub-leased an unused portion of the premises it occupied to Local 266, Associated Federation of Musicians.

On January 1, 1962, Mrs. Bourne, having died, and Leah Trahin, having inherited the property, a lease was

entered into between the latter and the union for the whole front portion which had theretofore been leased by National Housewares, and it was necessary that appellant find other quarters. All partitions, except those in the office area, were removed by appellant.[1] Rogers testified that he was notified by one of the union officials that the new lessee would have the benefit and use of the remaining partitions, and appellant could not remove them.

On January 6, 1965, National Housewares instituted suit against Mrs. Trahin, Delta Oxygen Company, and Local 266, American Federation of Musicians, seeking an order allowing it to remove the remaining partitions, or, in the alternative, praying that it be awarded a judgment against the defendants in the amount of $1,500.00 for the value of the property, and damages for the wrongful detention of same in the sum of $1,000.00. Mrs. Trahin answered, alleging *inter alia* that the partitions remaining on the premises were fixtures, and could not be removed without damaging the property; waiver and estoppel were also pleaded. A non-suit was taken as to Delta Oxygen and Local 266, and the court, sitting as a jury, proceeded with the trial of the case. At the conclusion of the evidence, the court found for Mrs. Trahin, holding that appellant had failed to show that the owner of the property had consented to the subleasing of same, and there was no evidence that the owner of the property knew, or had been advised, that the additions to the property were being made. The court also held that there was no proof that would make the property owner responsible for commitments made by Delta Oxygen to National Housewares. It was further found that the walls became a part of the realty, and were constructed by appellant for its own use and benefit, and that appellant did receive benefits from such construction. The complaint was ordered dismissed. From the judgment so entered, appellant brings this appeal.

---

[1]According to witness Rogers, about one-third were removed.

4

We agree with the trial court that National Housewares cannot prevail in this litigation, and actually, there are several reasons why this is true. As early as 1888, this court, in *Gocio* v. *Day,* 51 Ark. 46, speaking through Chief Justice Cockrill, said:

"The law imposes no obligation upon a landlord to pay his tenant for improvements made by him upon the demised premises. The tenant is presumed to repair and improve for his own benefit; and his only right to the fruits of his labor expended for that purpose, is to enjoy the enhanced value of the premises during the term, and within certain limitations to remove the improvement before its expiration. It is only by virtue of an agreement by the landlord to pay for improvements that the tenant can recover their value of him."

This case was cited with approval in *Capitol Monument Co.* v. *State Capitol Grounds Commission,* 220 Ark. 946, 251 S. W. 2d 473.

It has already been mentioned that the Bourne-Delta Oxygen lease was not offered into evidence, and there is absolutely no proof that either Mrs. Bourne or Mrs. Trahin ever had any knowledge that the partitions were placed in the building, much less that they agreed that these partitions could either be installed or removed. The record also clearly reflects that some of the partitions were removed when National Housewares gave up the premises; as to the wall partitions now in litigation, Rogers said:

"Mr. Thompson stated to me that he had agreed . . . that Mr. Trahin had signed his lease that he could rent our offices and this with the partitions included and stipulated and he at that time notified me that Mr. Trahin said that he would take a court order if I attempted to try to move the partitions."

This testimony was inadmissible as hearsay evidence, and excluded by the court; for that matter, there

is not one iota of evidence reflecting that Thompson (of the union) spoke for Mrs. Trahin—or that Mr. Trahin had the slightest authority to represent appellee.[2] The record does show that the partitions which were removed were not wanted by the union. It is thus evident that the question of whether these wall partitions could be removed, arose at that time, but again, there is no evidence that appellant ever made demand upon the owner to permit it to remove same. Instead, appellant waited more than two years before instituting suit in the matter. During this period, the walls were extended to the ceiling, and it appears from the pictures offered in evidence that the air conditioning system had been placed in the upper wall structure. To now remove the lower walls would be to remove the support of the upper walls, placed on the premises during the last two years.

It is thus shown that the partition walls have been utilized by the present tenant, and by the owner, for Rogers testified that these partition walls were included in the lease from Mrs. Trahin to the union.

Though appellant was aware of these circumstances, no explanation of any kind was given for waiting more than two years to commence action. Under the record here presented, it is evident that there was no effort to remove, or to obtain authority to remove, the partitions, within a reasonable period of time. In *Pearce* v. *Williamson and Caldwell*, 212 Ark. 413, 206 S. W. 2d 8, this court reversed a jury verdict for the appellees. There, a small house had been placed on Mrs. Pearce's property. Mrs. Pearce claimed that this house had been moved from other property belonging to her to the later location. Appellees contended that the house came from the Williamson farm. The jury found for Williamson and Caldwell, but this court reversed, stating:

---

[2]This is the only time that a Mr. Trahin is mentioned in the record, and it is not shown whether he was appellee's husband, brother-in-law, father-in-law, or what his relationship may have been to appellee.

"* * * But we do hold that in placing the house at the millsite (assuming that it came from the Williamson farm) without consulting Mrs. Pearce, and in failing to remove it within a reasonable time after the mill had served its purpose, Caldwell justified the belief that there was no expectation of claiming it."

We held that whatever rights the lessee might have had were so effectively disregarded that abandonment was fairly inferable, and Mrs. Pearce was justified in assuming that her possession would not be questioned.

Here, the property in dispute was attached to the building without consulting the owner, and it was not removed within a reasonable time after appellant left the premises.

Affirmed.