E. T. DAVIS ᴇᴛ ᴀʟ *v.* Kɪʀʙʏ C. SEAY ᴇᴛ ᴀʟ

5-4980                                   445 S. W. 2d 885

Opinion delivered October 20, 1969 ·

*Spencer & Spencer,* for appellants.

*Don Gillaspie,* for appellees.

*Brown, Compton, Prewett & Dukes,* for receiver.

Cᴀʀʟᴇᴛᴏɴ Hᴀʀʀɪs, Chief Justice. This is a second appeal relative to the foreclosure suit filed by Kirby C. Seay and wife against E. T. and T. G. Davis, father and son, respectively. *Seay* v. *Davis,* 246 Ark. 201, 438 S. W. 2d 479, handed down on February 24, 1969, and supplemental opinion on rehearing rendered on April 7, 1969. The facts concerning the commencement of the litigation are set out in that opinion. As reflected therein,

the Chancery Court, without notice to appellants, appointed a receiver to take charge of the Rose Haven Motel and Restaurant, purchased on time by the Davises from Seay; a hearing to determine whether the receiver should have been appointed was held on August 22, 1968; at that time the Chancellor announced that the receivership would be terminated on September 5, 1968. The person named as receiver on August 2 was E. P. Williams, who, at the time of being appointed receiver, had the Rose Haven Restaurant under lease, the restaurant being operated in connection with the motel. Williams had already paid the lease rental in full ($5,000.00) until September, 1969. He also held an option to renew for an additional year until September, 1970. Williams, upon termination of the receivership, filed his report with the court, and the Davises filed exceptions to this report. On December 16, 1968, the court conducted a hearing, and after hearing testimony, approved the receiver's report and denied the exceptions, ordered that Williams receive a $500.00 receiver's fee, allowed the receiver's attorney a fee of $200.00, and directed that the balance of any funds held be delivered to E. T. Davis. From this order, appellants bring this appeal. For reversal, it is first contended that all costs of the receivership should be paid by the Seays, and second, that the receiver should be charged with $1,-169.16, which was spent in remodeling the restaurant.

Relative to the first point, appellants argue that there was no valid reason for the appointment of the receiver, and Seay and wife, the mortgage holders, should be charged with the costs of the receivership. It is pointed out that the order of receivership was made without notice to appellants, and that, generally speaking, it is only in exceptional cases that a receiver should be appointed where no notice is given to adverse interests. *Excelsior White Lime Company* v. *Rieff*, 107 Ark. 554, 155 S. W. 921. Appellees depend primarily upon the fact that the mortgage itself provides that appellees shall be entitled to the immediate appoint-

ment by the court of a receiver without further showing than that there has been a breach or default.

However, we agree with appellants that this provision does not entitle the mortgagee to the appointment of a receiver as a matter of right, and the question of whether one should be appointed, despite the inclusion of the language quoted, still remains within the discretion of the court. As stated in 59 C. J. S. § 663(b), p. 1187:

"Generally a mortgage provision for a receivership, if valid, is entitled to due weight in determining whether a receiver will be appointed, and it may afford good ground for the appointment of a receiver where without such provision a receivership would be denied. So a stipulation for a receivership may be enforceable regardless of the insolvency of the mortgagor, at least where it is so provided by the agreement of the parties or where inadequacy of the security is shown.

"It has been held, however, that a receivership clause in a mortgage, even if valid, does not prima facie or as a matter of right entitle the mortgagee to the appointment of a receiver, and the question still remains within the discretion of the court."

Appellants state:

"* * * In this case the appellees, Kirby C. Seay and wife, obtained the appointment of a receiver without notice, when there was no necessity for a receivership, and in a case based on an attempted inequitable acceleration of a debt (as held by both the lower court and this court); and on application the court held the receivership unnecessary and dissolved it."

It appears that appellants are in error in this statement. The trial court did not hold that the receivership had been unnecessary, nor did it immediately dissolve same; to the contrary, the Chancellor kept the receiver-

ship in effect until September 5, some two weeks later. In addition, the court specifically retained jurisdiction for the reappointment of a receiver in the event of a future default by appellants. Likewise, we made no finding that a receivership was unnecessary; we simply affirmed the trial court in its finding that appellees were not entitled to accelerate the maturity of the note and mortgage, saying:

"It would be altogether inequitable to allow Seay to repudiate his own promise[1] and thereby not only retake the property but also, according to the proof, bring financial ruin upon the older of the two debtors."

Nor can we agree with appellants that the order appointing a receiver was entered without any justification. Seay testified that it had come to his attention that the younger Davis was getting drunk at night, insulting the customers, and making a "public nuisance" of himself in the restaurant adjoining the motel. He also testified that a partially completed building on the premises, which he understood would be completed, had instead been torn down. The witness said that young Davis did not look after the property, and had permitted it to become "run down and filthy." The July payment on the purchase was made by check in the amount of $1,682.21, and this check was not paid because of insufficient funds. When we consider this evidence, together with the provision in the mortgage for the appointment of a receiver, we are unable to say that the Chancellor abused his discretion in making this appointment, for it appears that this step was taken for the purpose of preserving the property under mortgage. Accordingly, we find no merit in the first point.

The second contention is based upon the fact that

[1]This has reference to the finding that Seay assured the elder Davis that, if the latter's son permitted a delinquency in his payments, he (Seay) would give Davis notice before proceeding further. The senior Davis had promised to make good any delinquency within three hours

the receiver had certain improvements made in the restaurant without first obtaining a court order authorizing him to do so. As previously stated, Williams, who had operated the restaurant since 1959, held a written lease for this property, all rentals being paid until September, 1969. His option for an additional year granted him the right to continue operations for an agreed rental of $500.00 per month. Williams was present on August 22, 1968, at the hearing when the trial court announced that the receivership would be terminated on September 5, 1968. It appears that a few days after this hearing, Williams arranged for the installation of additional air conditioning units, vent fans, and fluorescent lights in the restaurant at a total cost of $1,169.16, this amount being paid with receivership funds. Although Williams testified that he had talked with young Davis about some of the improvements, there was no firm commitment from either appellant that anything would be done.

"* * * He told me that we would get this done but we never did, he didn't have the money at that time and we never did get it done. I paid a year's lease, thinking maybe we could perhaps get it done at that time, which we did not get it done, so it was an item that needed to be done and when I was Receiver and had the money to have it done, I had it done."

Admittedly, the lease held by Williams did not obligate the owner to make these improvements.[2] Of course, the general rule is that, where there is no agreement between a landowner and tenant relative to improvements, the tenant is presumed to repair and improve for his own benefit. *National Housewares Corporation* v. *Trahin*, 247 Ark. 1, 444 S. W. 2d 68 and cases cited therein.

Be that as it may, we are not here concerned with whatever rights Williams, as a tenant, may have had

---

[2]The testimony is conflicting as to whether the equipment installed actually enhanced the value of the building, though the Chancellor so found.

against appellants, as landlords. Rather, we are dealing with a court officer, a duy appointed receiver. The trial court found that the receiver should have obtained authorization from the court before making any substantial expenditures, but further found that the purpose of the expenditures was for the improvement of the building, and that the value of the building had been enhanced. The Chancellor then added:

"* * * Therefore the Court is of the opinion that although this item may not be strictly legal by the cold black letter of the law, Equity demands that it be allowed, especially since all the expenses were paid out of the income of the business during the short time Receiver operated same."

We do not agree. In *Phelan Middle States Oil Corporation,* 154 F. 2d 978, the court makes some pertinent observations concerning receivers, as follows:

"* * * A receiver, as 'an officer or arm of the court,' is a trustee with the highest kind of fiduciary obligations. He owes a duty of strict impartiality, of 'undivided loyalty,' to all persons interested in the receivership estate, and must not 'dilute' that loyalty. He is 'bound to act fairly and openly with respect to every aspect of the proceedings before the court. * * * The court. as well as all the interested parties,' have 'the right to expect that all of its officers,' including the receiver, will not 'fail' to reveal any pertinent information or use their official position for their own profit or to further the interests of themselves or any associates. '* * * Where a receiver has a possible personal interest adverse to those of any parties to the receivership, it is usually unwise for him to participate in the reorganization; if he does so he must act with unusual caution; that the court has acquiesced in his participating does not relieve him of his duty of disinterestedness.' "

In 75 C. J. S. § 182 a, p. 828, it is stated:

"A receiver should not be motivated by personal considerations in his administration of the receivership estate. He administers the assets of the estate, not in his own right or for his own benefit, but for the benefit of the creditors and those who own the property or are otherwise interested therein. Ordinarily he will not be permitted to derive personal profit or advantage out of his office or the administration of his trust other than the compensation which may be allowed to him by law, * * * even though he acted in good faith and the transaction was free from fraud and even though the estate suffered no loss therefrom."

Further, under Sub-section b of the same section, p. 829;

"As a general rule, a receiver is prohibited from dealing with receivership property or funds for his own benefit, and he will not be permitted, as receiver, to purchase property from himself in his personal capacity, or to acquire for his personal benefit, directly or indirectly, pending the receivership, any property committed to his custody or management, however free from fraud the transaction may be."

Williams was certainly the chief beneficiary of the expenditure, if not the only one. Certainly, any enhancement in value could not be of any benefit to the owners until September, 1970. Furthermore, it definitely does not appear that there was any urgency for immediate installation of the equipment mentioned, for Williams had operated the restaurant for nearly nine years (without these improvements) before he was appointed as receiver.

We cannot approve a procedure which would serve as a precedent for any receiver to proceed to make additions and installations to property under his control, without any prior court approval, or without notifying other interested parties, no emergency or urgency being shown. This is particularly true in the present case,

where it definitely appears that the installations were made primarily for the benefit of the receiver, and within a few days after the court had announced the dissolution of the receivership on a date some two weeks hence.

Accordingly, this portion of the trial court's decree is reversed, and the cause is remanded to the Union Chancery Court, Second division, with directions to charge E. P. Williams, receiver, and his bondsmen, with the $1,169.16 expended for the installation of the equipment herein discussed.

It is so ordered.

Costs are to be divided equally between appellants and appellee Williams.