Lester Eblen STILES, Appellant,

v.

Fred GOVE, Executor of the Estate of Ethel Gove, Deceased, Appellee.

No. 19703.

United States Court of Appeals
Ninth Circuit.

May 24, 1965.

Frank Burgess, Mark P. Sullivan, Butte, Mont., for appellant.

Joseph Gary, Landoe & Gary, Bozeman, Mont., for appellee.

Before ORR, HAMLEY and BROWNING, Circuit Judges.

HAMLEY, Circuit Judge:

Tragedy struck suddenly on a pleasant August afternoon in Virginia City, Montana. Ethel Gove, fifty-two, and her two

grandchildren, Barbara, three, and Carol, one and a half, had boarded the ancient stagecoach at its regular stop in front of the old Opera House. Seventeen other passengers were also aboard as the stagecoach headed easterly up Wallace Street. Lester Eblen Stiles, in the driver's seat, held a tight rein on the four-horse team as the stage turned northerly and headed for the cemetery, known as "Boot Hill."

Then, reëntering Wallace Street at the village pump, the team and stage proceeded westerly past Mrs. Pankey's house nestled in the trees, and neared the Madison County Court House. Blondie and Huntley and the other two horses comprising what Robert Glick later called a "plumb gentle team" were performing well.

Shortly thereafter the stage approached an intersecting gravel street. The horses sighted something lying in the street directly ahead of them. They immediately "spooked." As seventy-six year old Chris Christianson later described it: "The horses, they trembled around and got scared. * * *" The animals began pulling hard to the right and everybody got excited and started yelling. In an effort to control the team, Stiles brought it up against an object on the right side of the street. He then hollered, "Everybody leave the coach."

The stagecoach was, in this manner, held stationary for a period of twenty-five to forty-five seconds, despite the fact that the horses were tossing their heads and dancing around. Mrs. Gove helped her grandchildren and others get off. But she was unable to dismount herself before the horses bolted with the stage. Stiles pulled hard on his right-hand reins for the purpose of heading the horses down an adjacent ravine, believing that if he tried to skirt the top of the ravine the stagecoach would surely tip over.

The horses plunged down the ravine with the stagecoach careening behind. Mrs. Gove jumped, or was thrown, from the hurtling vehicle. She went flying through the air and landed in an abandoned excavation. She lost consciousness in about a minute and within half an hour expired of severe internal injuries. The horses and stage went on a short distance. In front of the Bjirkstrom house the stage turned upside down and was completely demolished.

The incident recounted above is not a vignette of the Old West. It occurred on August 10, 1961. The stagecoach was not conveying prospectors, gamblers and dance hall girls. Its passengers were sightseeing tourists bent on briefly recapturing the historic past of Virginia City as a gold mining camp and territorial capital of Montana. The vehicle itself, while venerable, was not the characteristic enclosed coach of Bonanza lore. It was open on the sides, had a lightweight roof, and had been constructed and always used for sightseeing—in Glacier National Park from the turn of the century to 1916.

The object on the road which startled the horses was not a rolling tumbleweed or a coiled rattlesnake. It was a package of laundry which had fallen directly in the path of the horses from a panel truck as the latter turned onto Wallace Street from a side road. The object against which Stiles briefly held the rearing horses while passengers hastily dismounted was not a hitching post—but a parked car.

These prosaic details bring the described events into focus as the makings of a present-day lawsuit. Invoking federal diversity jurisdiction and proceeding under the Montana Wrongful Death and Survivor Statutes R.C.M.1947, § 93–2810, Fred Gove, surviving husband of Ethel Gove, and executor of her estate, brought this action to recover damages in the sum of $152,408.43. While three individuals and two companies were named defendants we are concerned with only one, Lester Stiles. In addition to being the driver on the day in question, Stiles owned the horses and was operating the stagecoach as a common carrier of passengers for hire.

The jury returned a verdict for Gove in the sum of $31,728.53. A judgment in this sum was entered against Stiles and he appeals.

Over objection, the district court gave an instruction based upon the doctrine of *res ipsa loquitur,* as quoted in the margin.[1] Stiles argues that the trial court erred in giving this instruction because such an instruction may not be given where the evidence shows the precise cause of the accident. Stiles asserts that the precise cause of the runaway here in question was shown beyond dispute.

The above-stated rule limiting the application of *res ipsa loquitur,* relied upon by Stiles, is established in the law of Montana. See Whitney v. Northwest Greyhound Lines, 125 Mont. 528, 242 P.2d 257, 260–261. But the rule is inapplicable here because the precise cause of the runaway was not shown beyond dispute. It is true that there is no conflict in the evidence as to why the horses became scared and began to rear. But there was expert testimony, although disputed, from which the jury could have found that if the brake had been adequate and Stiles had been a competent driver, the excited and stomping horses would not have bolted with the heavy stagecoach.

Stiles also argues that the *res ipsa loquitur* instruction should not have been given because "(w)hat happened here is such that in the ordinary course of things does occur even though one such as this defendant uses proper care." This argument has reference to the principle that *res ipsa loquitur* has no application unless the injury is such as in the ordinary course of things does not occur if the one having control of the thing which causes injury uses proper care. See Lux Art Van Service, Inc. v. Pollard, 9 Cir., 344 F.2d 883, decided April 20, 1965.

The evidence is in dispute as to whether carefully selected and trained horses such as a common carrier stage line is chargeable with using, will "spook" and attempt to bolt when suddenly confronted with a package in the roadway ahead of them. But assuming that this had been established beyond question, the evidence was in any event in conflict as to whether startled horses could run away with a heavy stagecoach such as this if it was properly braked and competently manned. The trial judge reasonably concluded on the evidence in this record, that a proper team drawing an adequately-equipped stagecoach with a qualified driver in charge does not ordinarily run away with the stage coach whenever a package of this kind is dropped in front of the horses.

The trial court did not err in giving the questioned instruction.

While the evidence was in dispute, we find nothing in the record which required the jury to find that the stagecoach brakes were adequate and that Stiles was competent to meet this kind of emergency. Thus even without reference to the high duty of care placed upon common carriers in Montana,[2] the trial court did not err in denying the motions for a directed verdict, to set aside the verdict, and for a new trial, all based on the asserted insufficiency of the evidence to show negligence and proximate cause.

1. "Now, you are instructed that Mrs. Gove, Ethel Gove, was a passenger in the stagecoach operated by Stiles, one of the defendants here, and the same was involved in an upset. Now, the fact of such upset, the fact that the stagecoach was upset raises an inference of negligence on the part of Stiles, and if you find from all of the evidence in the case that such negligence either independently or in conjunction with the negligence of the Beaverhead Laundry Company and Scally was the proximate cause of the death of Mrs. Gove, then your verdict must be against Mr. Stiles.

"The inference of negligence on the part of Stiles above mentioned may be overcome by evidence, and if you find that such inference has been overcome by evidence, or if you find that such negligence was not the proximate cause of the injury, and that the death of Ethel Gove was not proximately caused by such negligence, then you should find your verdict in favor of Stiles."

2. See R.C.M.1947, §§ 8–405, 8–406; Heck v. Northern Pacific Ry. Co., 59 Mont. 106, 196 P. 521, 522.

Stiles argues that the trial court erred in giving two instructions pertaining to the duty of care assumed by him as a common carrier. The only objection taken to these instructions was that they impose a higher degree of care than the legal duty owed by Stiles, and are tantamount to making him an insurer of the safety of his passengers.

■ These instructions referred to the duty placed upon Stiles to use "the utmost care and diligence" and "utmost care and forethought." They stated that he is liable for "the slightest degree of negligence" in furnishing gentle and well-broken horses, skillful, prudent drivers and necessary attendants, if any. They informed the jury that Stiles "is responsible for any neglect" pertaining to the safe carriage of passengers. We think these instructions correctly state and apply the law of Montana, as set forth in the statutes and court decision referred to in note 2.

■ Stiles contends that the trial court erred in granting plaintiff's motion to amend the complaint to conform with the evidence. Stiles argues that the amendment greatly enlarged the issues, particularly as to negligence. He does not, however, assert that because of such amendment he sought but was denied a continuance or that he was otherwise prejudiced.

The amendment of pleadings to conform to the evidence is authorized by Rule 15(b), Federal Rules of Civil Procedure. Rule 15 expressly provides that leave to amend is to be "freely" given. The Supreme Court has warned that this is a mandate to be heeded and that refusal to grant the leave without any justifying reason is an abuse of discretion. Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222. The trial court did not err in granting such leave in this case.

■ Finally, Stiles complains of the refusal of the trial court to give six instructions requested by him. In objecting to the failure of the trial court to give these instructions, counsel for Stiles did not state the grounds of his objection. Rule 51, Federal Rules of Civil Procedure, provides, among other things, that no party may assign as error the failure to give an instruction unless he objects thereto before the jury retires to consider the verdict, " * * * stating distinctly the matter to which he objects and the grounds of his objection." While we are thus not obliged to consider this specification of error, we have examined the instructions and believe that, read as a whole, they fairly and adequately advised the jury as to the essential issues, the theories of the parties and the applicable law.

Affirmed.