Kirby C. Seay et ux v. E. T. Davis et al

5-4793                                      438 S.W. 2d 479

Opinion Delivered February 24, 1969

[Supplemental Opinion on denial of Rehearing April 7, 1969, p. 627.]

---

*Don Gillespie* for appellants.

*Spencer & Spencer* for appellees.

GEORGE ROSE SMITH, Justice. The question is whether the chancellor was right in holding that the plaintiff-appellants were not entitled to accelerate the maturity of a note and mortgage because of the debtors' 48-hour delay in tendering the amount of the third monthly installment. We hold that the chancellor was right.

On April 8, 1968, Seay and his wife sold the Rose Haven Motel in El Dorado to the appellees, E. T. Davis and his son, T. G. Davis, for $185,000. The Davises made a down payment of $30,000 and gave a note and mortgage for the remainder, payable in monthly installments of $1,682.21. The first two payments were made within the one-month grace period allowed by the contract, but the check for the next payment given on July 29 by T. G. Davis was returned for insufficient funds on July 31—the last day of the grace period.

Seay at once exercised his option to accelerate the maturity of the note and without advance notice to the Davises filed this foreclosure suit on August 2. The court appointed a receiver, who operated the motel at a profit until he was discharged. The Davises' answer tendered the amount of the delinquency, plus court costs and an attorney's fee, and asked that the acceleration of the debt be set aside and that the receivership be terminated. After a hearing the court entered a decree which in effect granted the debtors the relief they sought but retained jurisdiction to renew the receivership if the debtors should again become delinquent.

It was formerly our rule that equity would grant relief against an attempted acceleration only for acci-

dent, mistake, fraud, or other inequitable conduct. *Johnson* v. *Guaranty Bk. & Tr. Co.*, 177 Ark. 770, 9 S.W. 2d 3 (1928). That rule has been changed by the Uniform Commercial Code, which reads:

> A term providing that one party or his successor in interest may accelerate payment or performance or require collateral or additional collateral "at will" or "when he deems himself insecure" or in words of similar import shall be construed to mean that he shall have power to do so only if he in good faith believes that the prospect of payment or performance is impaired. The burden of establishing lack of good faith is on the party against whom the power has been exercised. Ark. Stat. Ann. § 85-1-208 (Add. 1961).

The note in this case falls within the intent of the code, its language being that in the event of default the note may be accelerated "at the option of the holder."

Thus under the Code the issue centers upon Seay's good faith. In our opinion the weight of the evidence supports the view that Seay did not in good faith believe that "the prospect of payment or performance" had been substantially impaired. Before the default occurred Seay had complained to the elder Davis that his son was not capable of managing the motel properly. In our judgment that grievance was effectually answered by Davis's assurance that if a delinquency in the installment payments should occur Davis would, on being notified, make it good within three hours. According to Mr. Davis's testimony, which the chancellor evidently accepted, Seay promised to give Davis notice (and, inferentially, an opportunity to pay the arrearage) before filing a foreclosure suit. No such notice was actually given.

Moreover, on the issue of good faith it is important to remember that the sellers had received a $30,000 down payment and two monthly installments totaling more

than $3,000.    That the receivership proved to be profitable confirms the conclusion that the property itself could be expected to liquidate the indebtedness against it within the time and manner provided by the note and mortgage.    On the record as a whole we cannot say that the chancellor was wrong in concluding from the Davises' testimony that the sellers were motivated by a desire to turn the down payment into a quick profit rather than by a good faith conviction that the purchasers could not perform their contract.

Affirmed.