Don BROWN, Josef H. Miller and Allen L. McAlear, Plaintiffs-Appellants,

v.

**AVEMCO INVESTMENT CORPORATION,** Defendant-Appellee.

No. 77–2169.

United States Court of Appeals, Ninth Circuit.

Sept. 12, 1979.

---

Thomas F. Joyce, Butte, Mont., argued, for plaintiffs-appellants; Allen L. McAlear, Bozeman, Mont., on brief.

Lyman H. Bennett, III, Bozeman, Mont., on brief for defendant-appellee.

Before ELY and KILKENNY, Circuit Judges, and FERGUSON,* District Judge.

FERGUSON, District Judge:

Plaintiffs, citizens of Montana, sued defendant, a Maryland corporation, in a diversity action (28 U.S.C. § 1332) alleging a conversion of an airplane. Defendant counterclaimed for interference with contractual rights. A jury trial was held and verdicts against plaintiffs returned. A final judgment was entered in accordance with the verdicts. The district court denied plaintiffs' motion for new trial and defendant's motion for judgment notwithstanding the verdict. Plaintiffs appeal from the judgment and the denial of the motion for a new trial. This court orders a new trial on the grounds that the trial court gave erroneous instructions on the issue of acceleration and these instructions prejudiced the plaintiffs.

FACTS

1. On September 22, 1972, Robert Herriford borrowed $6500 from AVEMCO and executed a promissory note for $9607.92 (amount borrowed plus "add-on" interest and credit for insurance).

2. The promissory note was secured by an agreement granting to AVEMCO a se-

---

* Honorable Warren J. Ferguson, United States District Judge, Central District of California, sitting by designation.

curity interest in an airplane. The security agreement contained the following language:

> Time is of the essence of this Security Agreement. It is hereby agreed that if default be made in the payment of any part of the principal or interest of the promissory note secured hereby at the time and in the manner therein specified, or if any breach be made of any obligation or promise of debtor herein contained or secured hereby, or *if any or all of the property covered hereby be hereafter sold, leased, transferred, mortgaged, or otherwise encumbered without the written consent of Secured Party first had and obtained*, or in the event of the seizure of the aircraft under execution or other legal process, or if for any reason Secured Party may deem itself insecure, *then the whole principal sum unpaid upon said promissory note, with the interest accrued thereon* or advanced under the terms of this Security Agreement, or secured hereby, and the interest thereon, *shall immediately become due and payable at the option of Secured Party.* (emphasis added)

The security agreement also provided that the laws of Texas would apply with respect to rights under the agreement.

3. On July 4, 1973, Herriford entered into a lease and option agreement with the three plaintiffs whereby plaintiffs would pay hourly rentals for the plane and contribute equally toward Herriford's debt retirement with AVEMCO. Upon full payment of the mortgage on the airplane, the plaintiffs would have an option to purchase one-fourth ownership (each) of the plane for the sum of one dollar.

4. Plaintiffs became co-insureds with Herriford on the airplane in 1973. Copies of this policy were sent to AVEMCO.

5. On July 9, 1975, the plaintiffs advised AVEMCO that they had exercised their option with Herriford and now tendered to AVEMCO the $4,859.93 still owed by Herriford.

6. On July 18, 1975, AVEMCO refused this offer and wrote to Herriford announcing that because of his failure to comply with the note and security agreement, AVEMCO was accelerating the payments and the entire balance of $5,078.97 was due and payable on or before July 28, 1975. AVEMCO later explained that the additional amount was due to reimburse AVEMCO for its purchase of "Vendor's Single Interest Insurance."

7. On July 25, 1975, plaintiff McAlear advised AVEMCO that plaintiffs did not accept AVEMCO's rejection of their tender and that the money to retire the debt was available to AVEMCO at the First Security Bank of Bozeman, Montana, upon presentation of a satisfaction of the mortgage.

8. On July 29 or 30, 1975, an agent of AVEMCO used a passkey to start the plane and flew it to Seattle.

9. On July 30, 1975, AVEMCO notified Herriford of this repossession and demanded payment of $5,578.97 by August 10, 1975 or the aircraft would be sold with proceeds to be applied first to sale expenses and second to Herriford's account.

10. On September 22, 1975, a bill of sale for the plane was filed by AVEMCO with the Federal Aviation Agency. The consideration was $7000 and the bill of sale was dated August 25, 1975. (AVEMCO had earlier recorded a sale which was subsequently withdrawn as an error.)

11. Plaintiffs filed this action for conversion on August 15, 1975. Defendant counterclaimed charging interference with contract rights. A jury trial was held and the jury returned a verdict for defendant on both the conversion claim and the counterclaim. No damages were assessed, however.

12. Defendant moved for judgment notwithstanding the verdict and plaintiffs moved for a new trial. The district court denied these motions. Plaintiffs appeal from the final judgment and the denial of the motion for a new trial.

This court finds that the court gave erroneous instructions on acceleration and a new trial must be ordered. The court refused to instruct that acceleration could only be done if defendant believed in good faith that its security interest was impaired by the breach of the security agreement. That refusal was prejudicial error.

Before addressing the merits of the instruction on acceleration, however, the court must determine whether the plaintiff complied with Rule 51 of the Federal Rules of Civil Procedure to preserve this issue for review on appeal.

*RULE 51*

Rule 51 states:

Rule 51.

INSTRUCTIONS TO JURY: OBJECTION

At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests. The court shall inform counsel of its proposed action upon the requests prior to their arguments to the jury, but the court shall instruct the jury after the arguments are completed. No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection. Opportunity shall be given to make the objection out of the hearing of the jury.

Rule 51 must be read with Rule 46, however, which provides that formal exceptions to rulings or orders of the court are unnecessary. The central question is what action, short of formal objection, meets the requirements of Rule 51.

The District of Columbia Court of Appeals recently held that there is compliance with Rule 51 when a request to instruct has been submitted to the court, considered and refused by the court and further objection would be unavailing:

As courts and commentators have recognized, Rule 51 is to be read together with Rule 46, Fed.R.Civ.P., which states:

Formal exceptions to rulings or orders of the court are unnecessary; but for all purposes for which an exception has heretofore been necessary it is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take or his objection to the action of the court and his grounds therefor * * *.

In order to preserve for appeal an objection to a jury instruction, thus, it is not necessary for a party to except or object "if the party's position has previously been clearly made to the court and it is plain that a further objection would be unavailing." 9 C. Wright & A. Miller, Federal Practice and Procedure § 2553 at 639–640 (1971) (footnote omitted)

This was precisely the situation before the trial court in the instant case. Plaintiffs specifically requested that Instructions Nos. 2 and 4 be given. Instead the judge denied both. On the basis of the record below, it appears plain that this denial represented the trial judge's final opinion that these two instructions should not be given and that further objection by plaintiffs would have been not only unavailing but wasteful of the court's time. To hold that appellants are now precluded from complaining of the trial court's refusal to give these instructions would be an unnecessary elevation of form over substance. *Stewart v. Ford Motor Co.,* 179 U.S.App.D.C. 396, 406, 553 F.2d 130, 140 (D.C.Cir. 1977) (footnotes omitted)

The court in *Stewart* further noted that the same interpretation has been reached by both the Third and Seventh Circuits.

This circuit recently expressed a similar view of Rule 51 in *Robinson v. Heilman,* 563 F.2d 1304 (9th Cir. 1977). In that case, this court reviewed jury instructions in light of

a subsequent decision by the Supreme Court. In so doing, this court held that the defendant's failure to object to the trial court's instruction which incorporated the earlier controlling law of the circuit did not foreclose review by the court under the new case.

Rule 51 was designed to prevent unnecessary new trials caused by errors in instructions that the district court could have corrected if they had been brought to its attention at the proper time. . . The rule was not intended to require pointless formalities. "There is no need for an exception after the charge has been given where, as here, the court has been fully informed in advance of the charge as to appellants' contention and it was clear that further efforts to persuade the court would have been unavailing. [citations omitted]" . . . . Heilman's counsel had earlier unsuccessfully contended that his client should not be liable for simple negligence. Restating the identical point as an exception to the instruction would have been useless. 563 F.2d at 1306 (citations omitted)

■ Here the purpose of Rule 51 has been met. As discussed below, the district court was fully aware of plaintiffs' position in regard to acceleration. The court's refusal to give plaintiffs' proposed instructions on this issue represented a final decision by the court. To require plaintiffs to object after the instructions were given is to require a pointless formality. To preclude review of the court's instructions on this basis would exalt form over substance with injustice to plaintiffs.

Throughout the trial, plaintiffs contended that defendant could only properly accelerate payment of the loan if the defendant in good faith believed his security was impaired by the breach of the security agreement. Throughout the trial, defendant contended that mere technical violation of the security agreement, i. e., leasing the plane without consent, justified acceleration. This disagreement was apparent in the ex-amination of witnesses. Plaintiffs' counsel extensively questioned James Munsey, Vice President of AVEMCO, about the reasons for acceleration. Under this questioning, the witness testified that AVEMCO never contended that loan payments weren't being made or that payments would not be made in the future. Rather AVEMCO accelerated the loan because of some uncertainty about the insurance and because the lease to plaintiffs had never been approved. Defendant's counsel, on the other hand, questioned witnesses to elicit a simpler interpretation of acceleration rights: a lease without consent is a breach of the agreement—a default with rights of acceleration.

This disagreement was further focused for the court when defendant moved for a directed verdict after plaintiffs had presented their case in chief. The first issue in defendant's motion was whether or not AVEMCO was entitled to accelerate the promissory note, repossess and sell the plane. Defendant's counsel argued to the court:

First of all, it must be determined that there was a default in the Security Agreement, the default being relied upon by the Defendant as testified to by Mr. Munsey as an adverse witness. No. 1, that there was a lease or sale of the collateral without the written consent of the secured party. The evidence before this Court as presented by Mr. McAlear, as well as Mr. Miller, as well as Mr. Munsey, is that no one sought the consent and no consent was given . . . . So, at this point we have a default, we have a right of Avemco to take possession of the collateral which in fact they did.

Plaintiffs' counsel opposed the motion, directly arguing that acceleration was proper only if defendant's security was impaired:

In addition to that, the contract provided they couldn't sell it without their written consent. But that didn't cause a breach of the contract in the sense that they could repossess the property. The contract specifically provided upon the hap-

pening of that event, they had the option to declare the full amount due and payable. It wasn't until when they declared the full amount due and able [sic], they had to give notice that they were exercising that option . . . .. Further than that, the Uniform Commercial Code provides on the Option to Accelerate in 1–208 that a creditor who wishes to accelerate a note must act in good faith and must have some reasonable basis for believing that his security is impaired or that the indebtedness is not to be paid. Now, the evidence is uncontradicted in the record that my clients sent this money for twenty-three months to the Union Bank and the Union Bank was taking these checks. They surely knew, are these people strangers to the contract. Why didn't they immediately write and say, "we can't take your money, you are not our debtor." They were perfectly satisfied as long as they were getting paid, which is all they were entitled to to begin with and that is all that Avemco should be satisfied in obtaining. So, our contention shows that they acted in complete bad faith in accelerating the loan.

After the argument, the court reserved ruling on the motion. Defendant's case was then presented. Defendant called two witnesses who had been earlier called by plaintiffs. One of these witnesses was Mr. Munsey. On cross examination, plaintiffs' counsel once again extensively questioned the witness about why AVEMCO felt their loan was insecure. At the close of the trial, defendant renewed the motion for directed verdict. Once again, the court reserved ruling on the motion.

Plaintiffs had submitted to the court several jury instructions on the issue of acceleration:

Plaintiffs' Requested Instruction # 4

A secured party (like Avemco) has the right to repossess the collateral (airplane) only where there has been a default on the part of the debtor, and it may not take possession when there has been no default. Further, if the secured party reposses [sic] the collateral under an "insecurity" clause in the security agreement it may not do so unless it believes in good faith that the prospect of payment of the security itself is impaired.

Plaintiff's Requested Instruction # 9

A term providing that one party or his successor in interest may accelerate payment or performance or require collateral or additional collateral "at will" or "when he deems himself insecure" or in words of similar import shall be construed to mean that he shall have power to do so only if he in good faith believes that the prospect of payment or performance is impaired. The burden of establishing lack of good faith is on the plaintiffs against whom the power has been exercised.

Plaintiffs' Requested Instruction # 14

Defendant contends that the debtor, RICHARD HERRIFORD, leased or sold the airplane to the plaintiffs without its written consent as provided in the security agreement. The evidence of the plaintiffs shows this to be true. Upon the happening of this event, if you find it to be true the defendant had the option to declare the full amount due it be paid if it in good faith believed that the prospect of payment or performance of the contract was impaired.

Immediately before instructing the jury, the court announced to counsel the instructions he would give:

Let the record show that the Plaintiffs' requested instructions from Devitt & Blackmar are given and Court has refused Plaintiff's instructions 4, 5, 6, 9, 10, 11, 12 and 13. The Plaintiff has withdrawn 71.20 and 71.10. The Court will give 70.-01, 70.03, 71.01, 71.07, 71.08, 71.15, 71.18, 72.01, 81.01 and 81.03. The Court will give Plaintiffs' requested instructions as amended 14, 2, 3, 7 and 8.

Thus the court specifically rejected two instructions on acceleration and proceeded to give instruction 14 amended to omit the

clause "if it in good faith believed that the prospect of payment or performance of the contract was impaired."

It was clear from the court's action that the court agreed with defendant's position on acceleration. After extensive argument on this issue throughout the trial, the court announced and gave only the following instructions:

Defendant contends that the debtor, RICHARD HERRIFORD, leased or sold the airplane to the Plaintiffs without its written consent as provided by the Security Agreement. Upon the happening of this event, if you find it to be true, the Defendant had the option to declare the full amount due to be paid.

All parties knew from what had proceeded that the court did not unknowingly or hastily in giving this instruction. The court had heard argument on this issue of law, had viewed and rejected requested instructions on it and had specifically amended out "good faith" and "impairment" language from the instruction given on acceleration. It is understandable that when, after the court instructed the jury and asked if there were any objections to the instructions, the plaintiffs did not object to the acceleration clause instructions even though plaintiffs did specifically mention two other instructions which had not received as much attention. It was clear that an objection to the acceleration instruction would neither focus the issue further nor change the court's mind.

For these reasons, this court finds that plaintiffs complied with Rule 51 as to the instructions on acceleration and will in this appeal evaluate the merits of the instruction. This holding is consistent with other Ninth Circuit cases on Rule 51.

One of the most frequently cited Ninth Circuit cases is *Bertrand v. Southern Pacific Company,* 282 F.2d 569 (9th Cir. 1960). There the court acknowledged Rule 46 but held that remarks made by counsel in chambers, discussion of law in pretrial memoranda, and mere submission of proposed instructions did not clearly show that the issue was focused before the court. As this court stated:

The trial court is not required to rummage through trial briefs and proposed instructions in an effort to discover potential objections to instructions not yet given or formulated. 282 F.2d at 572.

*Accord, Wyller v. Fairchild Hiller Corp.,* 503 F.2d 506 (9th Cir. 1974) (plaintiff attached a cautionary instruction to his pretrial memorandum but did not include it in his proposed instructions submitted to the district court and this court found noncompliance with Rule 51).

Two other opinions expressed similar views. In *Sears v. Southern Pacific Co.,* 313 F.2d 498 (9th Cir. 1963), this court stated that plaintiff merely objected to the court's failure to give 21 requested instructions. It was not clear whether the district court had reviewed the 21 proposed instructions individually or had focused attention on the legal questions presented by them. Counsel made no effort to correct this. This circuit emphasized the dilemma of the court in this situation:

Plaintiff recognizes that when complaint is made of an instruction that is given, the rule requires it to be singled out and the grounds for objection separately stated; but he argues that where a requested instruction is refused the request itself satisfies this requirement. He reasons that a comparison of the instruction requested with the court's charge will reveal the error or omission in the latter. There might be merit in plaintiff's argument, if we were dealing with only one request covering a single subject or issue, but here a number of requests were submitted and if plaintiff's contention were correct, this would require the judge to rummage through all of them and discover, if he could, their counterparts in the charge. After that he would have to determine whether any of them should be substituted for or add-

ed to those given. We think such a construction would render the rule meaningless. 313 F.2d at 505.

See also Stiles v. Gove, 345 F.2d 991, 994 (9th Cir. 1965) where the appellant had objected to failure to give six requested instructions and the court found no compliance with Rule 51.

Six other Ninth Circuit cases mention that requested instructions were submitted but held that there had not been compliance with Rule 51. All of these cases deal with situations which are different from the one presented here. In Bock v. United States, 375 F.2d 479 (9th Cir. 1967) and Siebrand v. Gossnell, 234 F.2d 81, 96 (9th Cir. 1956), discussion of appellant's compliance with Rule 51 is very brief; it is unclear when and how their requests had been presented and the degree of attention the trial court had given to the proposed instructions. In Johnston v. Pierce Packing Co., 550 F.2d 474, 479 (9th Cir. 1977), the requested instruction was itself erroneous and in Shevlin-Hixon Co. v. Smith, 165 F.2d 170, 179 (9th Cir. 1947), appellant argued a different legal theory on appeal than in the trial court. It should be noted, however, that in both Johnston and Shevlin-Hixon, the court reviewed the merits of the instructions in spite of noncompliance with Rule 51. (See note 4 below.) In Investment Service Co. v. Allied Equities, 519 F.2d 508 (9th Cir. 1975),

the court discussed the poorly written instruction proposed by the defendant and invited the defendant to offer changes. In spite of this request, defendant neither offered changes nor objected to the instructions as given by the court. In Hargrave v. Wellman, 276 F.2d 948 (9th Cir. 1960), one of the issues on appeal was whether the trial court erred in declining to give appellant's requested instruction on the issue of the duty of a bailor. That issue had been withdrawn by both parties and the court and there had been no objection. There was no issue before the jury on which the instruction would have been appropriate.

Other opinions of this circuit which apply Rule 51 do not address the issue of requested instructions. There are a great many cases in which appellant failed to object at trial to allegedly erroneous or deficient instructions but there is no indication in the appellate opinion that appellant had requested the trial court to give any alternative instructions.[1] In many cases, this circuit, in finding noncompliance, expressly noted that appellant had neither objected to nor requested instructions.[2] In a few cases, the court discussed failure to formally object in regard to claims that instructions were erroneous but not in regard to issues on which appellant had requested instructions.[3]

Perhaps the most important line of cases from this circuit, however, is where this court found technical noncompliance with

1. See, e. g., United States v. Kleifgen, 557 F.2d 1293, 1299 (9th Cir. 1977); Bergstralh v. Lowe, 504 F.2d 1276, 1279 (9th Cir. 1974); Reed v. AMFWestern Tool, Inc., 431 F.2d 345, 349 (9th Cir. 1970); El Ranco, Inc. v. First National Bank of Nevada, 406 F.2d 1205, 1215 (9th Cir. 1968); Monsma v. Central Mutual Insurance Co., 392 F.2d 49, 53 (9th Cir. 1968); Crespo v. Fireman's Fund Indemnity Co., 318 F.2d 174, 175 (9th Cir. 1963); A.B.C. Packard Inc. v. General Motors Corp., 275 F.2d 63, 73 (9th Cir. 1960); Reynolds Metals Co. v. Yturbide, 258 F.2d 321, 332 (9th Cir.), cert. denied, 358 U.S. 840, 79 S.Ct. 66, 3 L.Ed.2d 76 (1958); Persons v. Gerlinger Carrier Co., 227 F.2d 337, 342–343 (9th Cir. 1955); Woodworkers Tool Works v. Byrne, 191 F.2d 667, 676 (9th Cir. 1951); State Farm Mutual Auto Insurance Co. v. Porter, 186 F.2d 834, 845 (9th Cir. 1950); Novick v. Gouldsberry, 173 F.2d 496, 500 (9th Cir. 1949); Christensen v. Trotter, 171 F.2d 66, 68 (9th Cir.

1948); Husky Refining Co. v. Barnes, 119 F.2d 715, 717 (9th Cir. 1941); Lynch v. Oregon Lumber Co., 108 F.2d 283, 286 (9th Cir. 1939).

2. See, e. g., United States v. Burlington Northern, Inc., 500 F.2d 637, 640 (9th Cir. 1974); Hays v. United Fireworks Manufacturing Co., 420 F.2d 836, 841 (9th Cir. 1969); Likins-Foster Monterey Corp. v. United States, 308 F.2d 595, 603 (9th Cir. 1962); Reiner v. Northern Pacific Terminal Co. of Oregon, 259 F.2d 438, 439 (9th Cir. 1958); Panther Oil & Grease Manufacturing Co. v. Segerstrom, 224 F.2d 216, 218 (9th Cir. 1955); and Bercut v. Park, Benziger & Co., 150 F.2d 731, 734 (9th Cir. 1945).

3. See, e. g., Jerrold Electronics Corp. v. Wescoast Broadcasting Co., 341 F.2d 653, 666 (9th Cir.), cert. denied, 382 U.S. 817, 86 S.Ct. 42, 15 L.Ed.2d 64 (1965); R. H. Baker & Co. v. Smith-Blair, Inc., 331 F.2d 506, 510 (9th Cir. 1964);

Rule 51 but proceeded to evaluate the merits of the appeal.[4] One of these cases, *Richfield Oil Corp. v. Karseal Corp.*, 271 F.2d 709 (9th Cir. 1959), contains dicta which is directly opposed to the view of Rule 51 stated by the District of Columbia Court of Appeals in *Stewart v. Ford Motor Co.*, 553 F.2d 130, *supra,* and the decision made here. In *Richfield,* the court stated that although requested instructions had been submitted and "counsel for Richfield knew the court's position and the court knew counsel's position," (271 F.2d at 722) Richfield must make formal objection to preserve the issue on appeal. This interpretation is inconsistent with the purpose of Rule 51 and can result in manifest injustice. Apparently even in *Richfield,* as in so many other cases, this court found that appellant had no right to review of the issue but justice required such review. The most recent instance of this is in *Wellman v. Jellison,* 593 F.2d 876 (9th Cir. 1979) where this court stated: "While the plaintiffs are not entitled to a review of the instruction as a matter of right, we have reviewed the instructions as a whole." 593 F.2d at 878.

■ Thus, even if there were not compliance with Rule 51 in this case, review would be appropriate. The acceleration issue was central to the trial and justice requires review of the treatment of that issue in the instructions as a whole.

## ACCELERATION

■ The facts as established at trial are as follows: The security agreement between the debtor Herriford and the creditor AVEMCO provided that if Herriford leased the plane without the consent of AVEMCO, AVEMCO could, at its option, accelerate full payment of the loan. Herriford leased the plane to plaintiffs in 1973. In that year, plaintiffs became co-insureds on the airplane and copies of the policy were sent to AVEMCO. For two years payments continued to be regularly made on the note. When on July 9, 1975, the plaintiffs contacted AVEMCO and offered what they believed was full payment of the debt, AVEMCO refused to negotiate with them and did not inquire further of either Herriford or the plaintiffs about their intention to pay the debt in full. While plaintiffs' offer of $4,859.93 may not have met the legal requirements of a valid tender, AVEMCO's complete disregard of the offer and eagerness to accelerate payment, repossess the plane and sell it for $7000 should have invoked the concern of the district court and prompted an examination of the fairness of the acceleration.

Both the Uniform Commercial Code (U.C.C.) and equity impose this duty. Plaintiffs sought this protection and proposed jury instructions on acceleration which incorporated a test of reasonableness and fairness: the U.C.C. requirement of good faith belief of security impairment. The district court rejected these and instructed that there could be an automatic enforcement of the acceleration clause if

---

*Brown v. Chapman,* 304 F.2d 149, 154 (9th Cir. 1962); and *Empire Printing Co. v. Roden,* 247 F.2d 8, 16 (9th Cir. 1957).

**4.** *See, e. g., Moore v. Telfon Communications Corp.,* 589 F.2d 959, 966 (9th Cir. 1978); *Johnston v. Pierce Packing Co.,* 550 F.2d 474, 479 (9th Cir. 1977); *Granite Music Corp. v. United Artists Corp.,* 532 F.2d 718, 722 (9th Cir. 1976); *Standard Oil Co. of California v. Perkins,* 347 F.2d 379, 389 (9th Cir. 1965); *Stiles v. Gove,* 345 F.2d 991, 994 (9th Cir. 1965); *Southern Pacific Co. v. Villarruel,* 307 F.2d 414, 415 (9th Cir. 1962); *Cosper v. Southern Pacific Co.,* 298 F.2d 102, 105 (9th Cir. 1961); *Williams v. Union Pacific Railroad,* 286 F.2d 50, 55 (9th Cir. 1960); *Hargrave v. Wellman,* 276 F.2d 948, 950–951 (9th Cir. 1960); *Richfield Oil Corp. v.*

*Karseal Corp.,* 271 F.2d 709, 722–723 (9th Cir. 1959), *cert. denied,* 361 U.S. 961, 80 S.Ct. 590, 4 L.Ed.2d 543 (1960); *Koch v. United States,* 264 F.2d 334, 338 (9th Cir. 1958), *cert. denied,* 358 U.S. 945, 79 S.Ct. 354, 3 L.Ed.2d 352 (1959); *Flintkote Company v. Lysfjord,* 246 F.2d 368, 388–389 (9th Cir.), *cert. denied,* 355 U.S. 835, 78 S.Ct. 54, 2 L.Ed.2d 46 (1957); *Walker v. West Coast Fast Freight, Inc.,* 233 F.2d 939, 943–944 (9th Cir. 1956); *Lloy v. Pacific Electric Railway Co.,* 207 F.2d 662, 665 (9th Cir. 1953); *Shanahan v. Southern Pacific Co.,* 188 F.2d 564, 568 (9th Cir. 1951); *Southern Pacific Co. v. Guthrie,* 180 F.2d 295, 301–302 (9th Cir. 1949); and *Shevlin-Hixon Co. v. Smith,* 165 F.2d 170, 179 (9th Cir. 1947).

the jury merely found the technical breach of a lease without consent. This instruction was erroneous and prejudicial. A new trial is required.

 Acceleration clauses are designed to protect the creditor from actions by the debtor which jeopardize or impair the creditor's security. They are not to be used offensively, e. g., for the commercial advantage of the creditor. Acceleration is a harsh remedy with draconian consequences for the debtor. Acceleration is a matter of equity and the courts, including those of Texas, have historically been careful to evaluate the fairness of acceleration in the particular facts of a case. As the Texas Court of Civil Appeals stated in *Parker v. Mazur*, 13 S.W.2d 174, 175 (Tex.Civ.App. 1928), courts of equity "will scan very closely the enforcement of so hard and rigorous a contract."

 In performing their equitable duties, Texas courts have long required that acceleration be reasonable in light of the facts. *Warren v. Osborne*, 97 S.W. 851 (Tex.Civ.App.1906); 125 A.L.R. 318. They would not permit enforcement of acceleration clauses when the debtor's default was due to the debtor's accident or mistake or to the creditor's own fraudulent or inequitable conduct. *Parker v. Mazur, supra; Hiller v. Prosper Tex*, 437 S.W.2d 412, 415 (Tex.Civ.App. 1969). Nor would they permit acceleration when the facts made its use unjust or oppressive. *Bischoff v. Rearick*, 232 S.W.2d 174, 176 (Tex.Civ.App.1950); *Vaughan v. Crown Plumbing & Sewer Service, Inc.*, 523 S.W.2d 72 (Tex.Civ.App.1975).

The provisions of the U.C.C. impose similar requirements on acceleration in the transactions it governs. The U.C.C. requirements are harmonious with the older equitable tests of reasonableness. Section 1–203 of the U.C.C. imposes an obligation of good faith on the performance or enforcement of every contract or duty within the Code. Section 1.208 further defines and applies the good faith obligation to options

to accelerate at will and requires that the accelerating party "in good faith believes that the prospect of payment or performance is impaired."

Texas has adopted the U.C.C.; it became effective in 1967. Section 1.208 of the Texas Business and Commercial Code states:

§ 1.208. Option to Accelerate at Will. A term providing that one party or his successor in interest may accelerate payment or performance or require collateral or additional collateral "at will" or "when he deems himself insecure" or in words of similar import shall be construed to mean that he shall have power to do so only if he in good faith believes that the prospect of payment or performance is impaired. The burden of establishing lack of good faith is on the party against whom the power has been exercised.

The Fifth Circuit has applied this Texas statute to acceleration based on a clause authorizing acceleration when the creditor "deemed himself insecure." *Sheppard Federal Credit Union v. Palmer*, 408 F.2d 1369 (5th Cir. 1969). Acceleration on this basis clearly falls within the specific language of § 1.208. *See also McKay v. Farmers and Stockmens Bank of Clayton*, 24 U.C.C. Rep. 517 (N.M.App.1978); *Ginn v. Citizens & Southern National Bank*, 145 Ga.App. 175, 243 S.E.2d 528 (1978); *Universal v. C.I.T. Credit Corp. v. Shepler*, 164 Ind.App. 516, 329 N.E.2d 620 (1975); *Farmer's Cooperative Elevator, Inc. v. State Bank*, 236 N.W.2d 674 (Iowa 1975); *Blaine v. General Motors Acceptance Corp.*, 82 Misc.2d 653, 370 N.Y.S.2d 323 (1975); *Van Horn v. Van De Wol, Inc.*, 6 Wash.App. 959, 497 P.2d 252 (1972); *Merchant v. Worley*, 5 U.C.C. Rep. 1255 (N.M.App.1969); and *Fort Knox National Bank v. Gustafson*, 385 S.W.2d 196 (Ky.1964).

 The more difficult question presented in this case is whether the statute applies to "default" acceleration clauses as well as to "insecurity" acceleration clauses. When the creditor chooses to accelerate because

the debtor violated a specific provision of the security agreement and not because he feels insecure, does § 1.208 apply? Here AVEMCO's agreement with Herriford contains both types of clauses. Yet AVEMCO's asserted basis for the acceleration is breach of the consent-for-lease provision of the security agreement and not the "deem itself insecure" language.

The question of application of § 1.208 to this situation has not been answered. Several courts have confronted security agreements which, like the one here, authorized acceleration both when a specific provision is breached and when the creditor deems itself insecure. In these cases, without much discussion, the courts have applied both the U.C.C. and equity principles. *See, e. g., State Bank of Lehi v. Woolsy*, 565 P.2d 413 (Utah 1977) and *Holmes v. Rushville Production Credit Association*, 353 N.E.2d 509, *vacated on other grounds*, 355 N.E.2d 417, *reinstated*, 357 N.E.2d 734 (Ind. App.1976). In *Williamson v. Wanless*, 545 P.2d 1145 (Utah 1976), the Utah Supreme Court applied § 1.208 to acceleration authorized by an agreement which apparently did not even include any "deem itself insecure" language. In both *State Bank of Lehi* and *Williamson*, the Utah court emphasized that "this statute [§ 1.208] is in harmony with the principles of equity . . . . [i]t seems to recognize that acceleration is a harsh remedy which should be allowed only if there is some reasonable justification for doing so, such as a good faith belief that the prospect of payment is impaired." *Williamson v. Wanless*, 545 P.2d at 1149.

A few state courts have stated that § 1.208 does not apply to acceleration for a technical default. In *Crockett v. First Federal Savings and Loan Association*, 289 N.C. 620, 224 S.E.2d 580 (1976), the financing agreement for a purchase of land provided that the creditor could accelerate if the debtor sold the land without the creditor's consent—a "due-on-sale" acceleration clause. The court assumed *arguendo* that the U.C.C. applied and went on to state that

§ 1.208 does not apply to "default-type clauses." The court, however, did not base its decision to allow acceleration on the U.C.C. Rather it made the specific finding that the exercise of the due-on-sale clause was reasonable in the particular factual context; there were no allegations of fraud or inequitable or oppressive conduct. 289 N.C. at 630–31, 224 S.W.2d at 587.

In *Fay v. Marina*, 6 U.C.C. Rep. 516 (N.Y. S.Ct.1969), the creditor accelerated because of nonpayment and the court simply noted: "Defendant seeks to invoke the effect of U.C.C. § 1–208, which is not applicable (see U.C.C. § 3–503)." The Code section cited as support for refusing to apply § 1.208 does not reveal the court's reasoning and the court does not provide further explanation. Finally, in *Gorham v. Denha*, 77 Mich.App. 264, 258 N.W.2d 196 (1977), the creditor sought to accelerate and repossess when debtors "technically defaulted" on various provisions in the security agreement. The trial court refused this relief because plaintiff had not shown injury from the default. The appellate court reversed and held that the U.C.C. allows enforcement of acceleration clauses for such default whether the creditor suffered a loss or not. The appellate court, however, failed to even cited § 1.208 of the Code.

These cases do not answer the question. This court still confronts the same issue addressed by the Arkansas Supreme Court in *Seay v. Davis*, 246 Ark. 201, 438 S.W.2d 479 *modified on rehearing*, 246 Ark. 628, 438 S.W.2d 479 (1969). In that case, the debtor defaulted in payments and the agreement provided that upon such default the creditor could at its option accelerate. The court initially found that because of the "at the option of the holder language," the note fell within the intent of the Code and proceeded to find that the creditor had not accelerated based on a good faith belief of security impairment. On rehearing, however, the court adopted a more cautious approach:

In a petition for rehearing the appellants insist that the Code applies only

when the contract permits the creditor to accelerate the maturity "at will," or words to that effect, whereas here there is also a condition in the contract that the debtors must be in default. The Commissioner's Comment to the cited section of the Code lends support to the appellant's argument, for it refers to an acceleration "at the whim and caprice of one party." See also the Commissioner's Comment 4 to § 85-3-109.

We think it proper to modify our original opinion by leaving that question open for future decision, for even if the appellants are correct in their construction of the Code the decree must nevertheless be affirmed under our prior decisions. Apart from the Code, as indicated in our original opinion, a court of equity will protect a debtor against an inequitable acceleration of the maturity of the debt. 246 Ark. at 628, 438 S.W.2d at 481.

As will be discussed below, like in *Seay*, this court's decision to remand for a new trial is also fully supported by equity. This court also believes, however, that § 1.208 does apply. Here the creditor claims that its option to accelerate vested when a lease was made without its consent. Under the security agreement between Herriford and AVEMCO, acceleration was not automatic and definite upon execution of a lease without consent. Rather acceleration required both Herriford's lease without consent and AVEMCO's decision or exercise of its option to accelerate. The term of a security agreement with any type of acceleration clause is less certain than one which specifies a definite date for final payment without authorizing any acceleration. An agreement is even less certain when the authorized acceleration is not immediate upon the occurrence of a certain event (e. g., default in payment, making a lease without consent, selling the property) but is further subject to the option of the secured party. Finally, the least certain agreement is one where acceleration is permitted whenever the creditor deems itself insecure.

Because acceleration clauses introduce uncertainty to an agreement, pre-Code law questioned the negotiability of such instruments. Gradually courts upheld the negotiability of some of the more definite acceleration clauses but confusion and concern persisted, especially as to the least certain "insecurity" acceleration clauses. *See* Gilmore, *Security Interests In Personal Property*, § 43.4 (1965).

The U.C.C. definitively resolved the issue by providing that a note with any type of acceleration clause is negotiable. Section 3–109, U.C.C. As paragraph 4 of the U.C.C. Comment to § 3–109 explains, challenges to agreements with acceleration clauses can no longer be based on negotiability, but "must be based rather on the possibility of abuse by the holder, which has nothing to do with negotiability and is not limited to negotiable instruments. *That problem is now covered by Section 1–208.*" (emphasis added)

According to its language, § 1.208 applies when a party in interest may accelerate payment "at will" or "when he deems himself insecure" or "in words of similar import." Here the agreement provided that AVEMCO may, *at its option*, accelerate payment when the debtor leases without consent or when AVEMCO deems itself insecure or when various other contingencies occur. The agreement does not require immediate, automatic acceleration upon one of these events but further ties acceleration to the option of AVEMCO. Section 1.208 applies the Code's good faith concept to such acceleration and provides that the creditor has power to exercise the option "only if he in good faith believes that the prospect of payment or performance is impaired."

An option to accelerate when the debtor leases without consent is different, however, than one based on the creditor's feelings of insecurity. The lease is within the control of the debtor; the feelings of insecurity are subject to the whim and caprice of the creditor. As the U.C.C. Comment to § 1–208 suggests, the drafters' greatest con-

cern was with abuse due to the uncontrolled will of the creditor. Some may argue that § 1.208 therefore addresses only "insecurity" clause acceleration. While this type of clause may be the primary focus of § 1.208, this court does not believe it is the only focus. Abuse is possible with "due-on-lease" acceleration as well. The "option" to accelerate based on a lease, like the one based on feelings of insecurity, could be used by AVEMCO as a sword for commercial gain rather than as a shield against security impairment. Section 1.208, growing from and incorporating equitable principles, defines "good faith" in acceleration to provide protection from such abuse.

The trial court gave a general good faith instruction but refused to give plaintiffs' proposed instruction requiring for acceleration the good faith belief that payment or security is impaired. The U.C.C. requires more than a good faith belief that a technical breach occurred but the court's instructions erroneously required no more.

Even if § 1.208 is not applicable to this factual situation, equity requires a new trial. The agreement provides that Texas law would govern rights under the agreement. The trial court failed to exercise its equitable duties as defined by Texas precedent.

Texas courts have recognized both the validity of acceleration clauses and their potential for abuse. In 1950, the Court of Civil Appeals discussed the creditor's option to accelerate upon the debtor's default:

> The exercise of the remedy works a forfeiture of the right to pay over a period of time. In the instant case of some eight years. [sic] The provision for acceleration of the time of payment is a privilege running in favor of the holder and in many instances a valuable privilege. It is optional with the holder whether he will exercise it or not. The accelerated clause provides against the suffering of obvious hardships by a holder of a note or lien. Without the privilege a holder might be required to bring a series of suits, or wait an unreasonable

time to collect his debt in cases, for example, where a vendee abandoned premises and defaulted in installments of principal and interest, or one or the other. It might also serve, and in many instances does, to protect the debt or lien in case of wilful or avoidable default. On the other hand, it may be used unjustly and oppressively. We think such is the case here. *Bischoff v. Rearick,* 232 S.W.2d 174, 176, *supra.*

In *Bischoff,* the trial court refused acceleration by the noteholder when the debtor was late in one payment and had subsequently tendered that amount to the holder. The court found that the creditor was using the technical default as an excuse for maturing the debt. The same equity principles prohibited acceleration in *Vaughan v. Crown Plumbing & Sewer Service, Inc.,* 523 S.W.2d 72, *supra.* There the creditor sought acceleration because of late payment in one month after having accepted late payments for previous months. In affirming the trial court's injunction of a foreclosure sale on the basis of equity, the court wrote:

> Circumstances which tend to show that a holder has exercised the optional right of acceleration, not for the purpose of protecting his debt or preserving the security, but for the purpose of coercing the maker to pay the entire debt or forfeit his property, is relevant with respect to these equitable considerations. 523 S.W.2d at 76 (citations omitted)

In the instant case, the facts before the trial court demanded the incorporation of equity considerations into the instructions to the jury. The facts sufficiently suggested the possibility that, like in *Vaughan* and *Bischoff,* the creditor accelerated not out of a reasonable fear of security impairment but rather from an inequitable desire to take advantage of a technical default. Indeed acceleration because of a lease executed two years earlier is less clearly defensive and is subject to even more suspicion. In *Vaughan* and *Bischoff,* payments to the

creditor were late. Here, there was no suggestion that the prospect of payment was impaired. There was some discussion at trial of alleged insurance difficulties but these allegations were never fully developed and the trial court's instruction clearly allowed the jury to find AVEMCO's acceleration lawful solely on the basis of a lease without consent without even considering insurance questions.

The "due-on-lease" acceleration here demands even more scrutiny than other kinds of "default" acceleration. A breach in insurance provisions more clearly jeopardizes the security. A default in payment more directly raises doubts about future full payment. Unlike a lease, a sale of the property transfers title of the collateral to new owners, non-signators to the security agreement and unknown to and unapproved by the creditor. The differences between "due-on-sale" and "due-on-lease" clauses has been extensively discussed by the California Supreme Court in the context of real property transactions and the doctrine of restraint on alienation. *Wellenkamp v. Bank of America*, 21 Cal.3d 943, 148 Cal.Rptr. 379, 582 P.2d 970 (1978); *Tucker v. Lassen Savings & Loan Association*, 12 Cal.3d 629, 116 Cal. Rptr. 633, 526 P.2d 1169 (1974); *LaSala v. American Savings & Loan Co.*, 5 Cal.3d 864, 97 Cal.Rptr. 849, 489 P.2d 1113 (1971). *See also Medovoi v. American Savings & Loan Association*, 89 Cal.App.3d 244, 152 Cal. Rptr. 572 (1979). Many other states have scrutinized enforcement of "due-on-lease" and "due-on-sale" clauses in mortgage agreements and have held that equity prohibits acceleration on a technical breach without a finding of security impairment. *See Continental Federal Savings & Loan Association v. Fetter*, 564 P.2d 1013, 1017 n. 4 (Okl.1977); 69 A.L.R.3d 713 *et seq.* As the court in *Baltimore Life Insurance Co. v. Harn*, 15 Ariz.App. 78, 486 P.2d 190, 193 (1971) stated, "[o]therwise the equitable powers of the trial court would be invoked to impose an extreme penalty on a mortgagor with no showing that he has violated the substance of the agreement, that is, that he would not make a conveyance that would impair the security." 15 Ariz.App. at 81, 486 P.2d at 193.

For these reasons, this court finds that the trial court erred in refusing to give instructions on acceleration which incorporated the U.C.C. and equitable principles. This error prejudiced the plaintiffs. The judgment of the district court is reversed and the case is remanded to the district court for a new trial.

KILKENNY, Circuit Judge, dissenting:

The majority opinion completely devitalizes the positive provisions of Rule 51, FRCivP, providing among other things that no party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, and states distinctly the matter to which he objects and the grounds of his objection.

I.

The majority relies for reversal on the failure of the district court to give appellants' requested instructions numbers 4, 9 and 14. Strangely enough, the *appellants do not* claim error on the refusal of the court to give those instructions. To the contrary, the appellants claim error in the refusal of the court to give their requested instructions numbers 5 and 6, requests which have nothing whatsoever to do with the question of "acceleration," upon which the majority focuses. Manifestly, we should not reverse on alleged issues which are not even presented to us for decision. Appellants present the issue of error on failure to give requested instructions in the following language:

"(2) Did the court err in refusing to give instructions numbered 5 and 6 tendered by the plaintiffs?" App. Brief, P. 1.

Rule 28(a)(2), FRAP, requires an appellant, among other things, to specify in the brief "A statement of the issues presented for review." Simply stated, contentions

which are not specified in the appellants' brief should not be considered by the reviewing court. *Palacios v. Government of Guam*, 325 F.2d 543 (CA9 1963); *United States v. Shingle*, 91 F.2d 85, 87 (CA9 1937), cert. denied 302 U.S. 746, 58 S.Ct. 264, 82 L.Ed. 577. An alleged error in refusing to give a requested instruction should be disregarded where it is not specified in the appellants' brief. *Muyres v. United States*, 89 F.2d 783, 784 (CA9 1937).

Moreover, even as late as the date of filing their motion for a new trial, the appellants made no claim of error on the failure of the court to give instructions 4, 9 and 14. Instead, the appellants raised objections to the failure of the court to give instructions numbered 5 and 6. Clearly, the majority should confine itself to the scope of appellants' contentions and not survey the wide open range in search of a stray maverick on which to ride to a reversal. To turn an appeal into a search for error no more promotes the ends of justice than to turn a trial into a donnybrook.

II.

The record before us presents a classic example of the judge conferring with the attorneys and informing them on the instructions he was going to give and those which he would not. Included among the requests for instructions were those pressed by the majority. The court advised counsel he would not give those requests. No objection or exception was then made by counsel for appellants. Instead, they proceeded to argue the case. After the arguments, the court instructed the jury in conformity with his previous announcements. At the close of the arguments, and in response to query from the court, appellants' counsel excepted to the court's instructions as follows:

"MR. JOYCE: Plaintiffs take exception to the Court's refusal to give the instruction on the damages pursuant to Texas law instead of Montana law, on the ground that the Montana law applies.

Plaintiffs take further exception to the Court's instructions with reference to tender as defined by Texas law rather than Montana law." [R.T., Vol. IV, p. 236.]

No mention was made of the failure of the court to give the requested instructions now utilized by the majority, but not argued by the appellants. The failure of appellants to object to the court's omission to give their requested instructions and the giving of an instruction which modified the request number 14 makes it rather obvious appellants' counsel was then satisfied with the instructions, as given.

This is not a case where the court failed to give counsel an opportunity to object. As above stated, the record shows that the court gave counsel the opportunity to object, that counsel did object, but that counsel did not object to the failure of the court to give appellants' requested instructions 4, 9 and 14, or for that matter the failure to give requests 5 and 6. It gave an instruction which modified number 14, and evidently counsel at that time was satisfied with the modification and with the court's overall instructions.

Under the provisions of Rule 51, FRCivP, we have held that the failure to make a timely objection and to distinctly point out the matter to which the objection is related precludes an appellant from raising that point on appeal. *Standard Oil Co. of Calif. v. Perkins*, 347 F.2d 379 (CA9 1965). The fundamental purpose of Rule 51, prohibiting the assignment of error by a party on the basis of failure or refusal by the trial court to give or fail to give an instruction unless he objects before the jury retires, is to give the trial judge an opportunity to correct the instructions. *Seltzer v. Chesley*, 512 F.2d 1030 (CA9 1975). In *Cosper v. Southern Pacific Co.*, 298 F.2d 102, 104 (CA9 1961), the court said:

"The trial of a case is an adversary proceeding and we see no reason to relieve counsel from the requirement to make known his desire to object to the court's

instructions before the retirement of the jury. We, therefore, hold that counsel must indicate in some manner before the jury retires that he desires to make an objection to the instructions before he can successfully contend that the court has failed to comply with the provisions of Rule 51."

The majority relies heavily on *Stewart v. Ford Motor Co.*, 179 U.S.App.D.C. 396, 406, 553 F.2d 130, 140 (DC Cir. 1970), and *Robinson v. Heilman*, 563 F.2d 1304 (CA9 1977). I find both cases clearly distinguishable. In each of those cases, the court held that the purpose of Rule 51 had been fulfilled.

In *Robinson*, our circuit held Rule 51 inapplicable. The court there stated that no exception is required when it would not have produced any different result in the trial court because "a solid wall of circuit authority" then foreclosed the point. The trial court had correctly instructed the jury under the law existing at that time. The controlling law was changed after the instructions were given. No such "wall" is here in existence.

Our court has never gone as far as the D.C.Circuit in *Stewart v. Ford Motor Co., supra,* and held that Rule 51 amounts to a mere formality, and that if the party makes *his position clear during the course of the trial,* he can, by keeping silent, circumvent the positive provisions of the Rule. Here, as distinguished from *Stewart v. Ford Motor Co., supra,* appellants' point on acceleration was limited to their attorney's response to the appellee's motion for a directed verdict *at the close of the appellants' case.* My search of the record reveals no such argument at the close of all the testimony, nor when the court was consulting with the attorneys about the instructions. In *Stewart,* it was clear on the record that the denial of the request for instructions represented the trial judge's final opinion, and that further objection by the plaintiffs would have been not only unavailing, but even wasteful of the court's time. That is clearly not the situation in the instant case.

Here, appellants pressed their acceleration point only in response to the appellee's early motion for a directed verdict. The instructions were not mentioned or in any way involved at that time.

On the record before us, it was entirely possible that the court might revise its instructions so as to satisfy the appellants' contentions. The majority argues that the court erroneously revised requested instruction number 14 by eliminating the language " '[I]f it in good faith believe[s] that the prospect of payment or performance of the contract was impaired.' " but fails to point out that it gave an adequate instruction on good faith in the following language:

"Every contract or duty within the Uniform Commercial Code imposes an obligation of good faith in its performance or enforcement. Good faith means honest in fact in the conduct or transaction concerned."

The Ninth Circuit case most closely on point on this subject is *Richfield Oil Co. v. Karseal Corp.,* 271 F.2d 709, 718–22 (CA9 1959), *cert. denied* 361 U.S. 961, 80 S.Ct. 590, 4 L.Ed.2d 543. There, the court on a record almost identical to ours, fully analyzed the background of Rule 51 and arrived at the following conclusion:

"Thus, although the court's position was well known to Richfield's counsel, when the time arrived to make objections, Rule 51 of the Rules of Civil Procedure was not complied with. The purpose of the Rule is to give the court a chance to correct an erroneous instruction on the law. Though viewed realistically, we *might* hazard a guess that it would have been a difficult task, even by stating distinctly the grounds of the objection, to have caused the court to change its previously announced position. *Nevertheless, to preserve the question, on appeal, not only should the objection have been made but the grounds thereof should have been distinctly stated.* [Citations omitted.]

"Accordingly, Richfield's objection to the court's instructions is not available to it on this appeal. But we have nevertheless considered the question as to whether giving the instruction was error.

"(b) It was error to so instruct but the error was not prejudicial." At pp. 722–23. [Emphasis supplied.]

Despite the majority's argument to the contrary, *Richfield Oil* is not dicta.

I will not attempt to analyze the long list of Ninth Circuit cases cited by the majority, practically all of which hold that there must be a compliance with Rule 51. For example, *Wyler v. Fairchild Hiller Corp.*, 503 F.2d 506 (CA9 1974); and *Sears v. Southern Pacific*, 313 F.2d 498 (CA9 1963).

Needless to say, the instructions should be read as a whole. The necessity, extent, and character of jury instructions are issues left to the sound discretion of the trial court. *United States v. McCall*, 592 F.2d 1066, 1068–69 (CA9 1979); *Wilson v. United States*, 422 F.2d 1303, 1304 (CA9 1970). Clearly, the appellants received the full benefit of their requested instruction 14. Inasmuch as the court gave an instruction on acceleration and the appellants failed to object or except thereto and, additionally, did not assign as error the failure to give their own request on the same subject, I decline to discuss the majority's arguments in this area.

Although our circuit has had several opportunities to extend the plain error doctrine to civil appeals, we have declined to do so. *Monsa v. Central Insurance Co.*, 392 F.2d 49, 52–53 (CA9 1968); *Hargrave v. Wellman*, 276 F.2d 948, 950 (CA9 1960). In light of the facts that appellants failed to raise their objections at the proper time at trial and failed to raise the claims of error focused upon by the majority, those claims should not be heard. Here it appears, that the case was thoroughly tried by the attorneys and the issues of fact decided by a jury.[1] Although I might have decided the case the other way, I cannot say that there was a miscarriage of justice.

### CONCLUSION

I would affirm the judgment of the lower court.

---

1. The court instructed, in part, as follows:

"The principal issue involved in the Plaintiff's case is whether there was a conversion by the Defendant of the airplane. If the defendant had the legal right to take possession of the airplane on July 29, 1975, there was not conversion by the respossession (sic). Conversely, if it did not have the legal right to do so at that time, there was a conversion.

"Defendant contends that the debtor, RICHARD HERRIFORD, leased or sold the airplane to the Plaintiffs without its written consent as provided by the Security Agreement. Upon the happening of this event, if you find it to be true, the Defendant had the option to declare the full amount due to be paid.

"The Defendant had the duty to notify the debtor, RICHARD HERRIFORD, that it was exercising its option to declare the full amount due. It also had the duty to notify the Plaintiffs of the exercise of its option, if it knew that the airplane was owned by the Plaintiffs. The Plaintiffs contend the Defendant knew of their ownership prior to the call of the note, the Defendants deny that knowledge. This is a factual dispute you must resolve." [R.T., Vol. IV, pp. 226–227.]

In the light of the neglect of the appellants to object or except to the above and to the failure to give their requested instructions, I would say that as a whole the court's instructions fully covered the issues in the case.